PETTIGREW, J.
 

 |4After agreeing to settle an earlier oilfield contamination lawsuit filed against it
 
 *370
 
 and others by the injured property owner, plaintiff oil company filed this suit seeking contribution and/or indemnity from alleged fellow tortfeasors and them insurers. Plaintiffs original petition sought contribution from a single, now-defunct, alleged fellow tortfeasor and numerous insurers. In response to peremptory exceptions raising the objection of no right of action, plaintiff later amended its petition to name additional tortfeasors. Following a hearing, the trial court maintained the exceptions filed in response to plaintiffs original petition, and plaintiff applied for writs. The trial court later sustained similar exceptions filed in response to plaintiffs supplemental and amended petition, and plaintiff again sought writs. Both writ applications were later converted to separate appeals.
 

 In the related appeal,
 
 OXY USA, Inc. v. Quintana Production Company,
 
 et al. (an unpublished opinion), 11-0046 (La.App. 1 Cir. 10/19/11), 2011 WL 4965032, also decided this date, this court, for reasons more fully set forth herein, affirmed the trial court’s maintenance of the peremptory exceptions raising the objection of no right of action filed in response to plaintiffs original petition except as to Corbin J. Robertson, Jr., in his capacity as the Independent Executor of the Estate of Corbin J. Robertson and its insurers.
 

 FACTS
 

 Plaintiff, OXY USA, Inc. (“OXY”), commenced this litigation through the filing of a petition for damages on October 21, 2008, seeking contribution and/or indemnity for property contamination and remediation claims that OXY had previously agreed to settle in an earlier oilfield contamination lawsuit filed against OXY by the Brownell Land Company, Inc. (“Brow-nell”) in 2004 (“the Brownell lawsuit”). The earlier Brownell lawsuit asserted claims against OXY, Quintana Production Company (“Quintana Production”), and others claiming that said defendants’ oil and gas exploration and production activities caused contamination on property owned by Brownell, in Assumption Parish, Louisiana. Brownell further claimed that it did not discover the alleged damage to its property until less than one year before it filed suit. No third-party claims or cross claims were filed by OXY or |sany other party against Quintana Production in the Brownell lawsuit. Quintana Production was voluntarily dismissed from the Brownell lawsuit in 2005.
 

 ACTION OF THE TRIAL COURT
 

 In its original petition for damages, OXY sought contribution and/or indemnity from Quintana Production, together with Fidelity and Casualty Company of New York;
 
 [1]
 
 Allianz Underwriters Insurance Company;
 
 [2]
 
 Hartford Accident & Indemnity Company; Northern Insurance Company of New York; Valiant Insurance Company; International Insurance Company; Aetna Casualty and Surety Company;
 
 [3]
 
 Highlands Insurance Compa
 
 *371
 
 ny;
 
 [4]
 
 Twin Cities Fire Insurance Company; Safety Mutual Casualty Company;
 
 [5]
 
 New York Underwriters Insurance Company; National Surety Corporation; Mutual Fire Marine & Inland Insurance; Lexington Insurance Company;
 
 [6]
 
 Integrity Insurance Company; Government Employees Insurance Company (GEICO);
 
 [7]
 
 Gibraltar Casualty Company;
 
 [8]
 
 Chubb Group of Insurance Companies; First State Insurance Company; Associated International Insurance Company;
 
 [9]
 
 Federal Insurance Company;
 
 [10]
 
 John L. Wortham and Son, L.P.;
 
 [11]
 
 Underwriters at Lloyd’s, London; Granite State Insurance Company; The Home Indemnity Company; American International Group;
 
 [12]
 
 Underwriters Indemnity Company; Admiral Insurance | ^Company; AIU Insurance Company;
 
 [13]
 
 American Centennial Insurance Company;
 
 [14]
 
 American Excess Insurance Company; American General Companies; California Union Insurance Company;
 
 [15]
 
 Chicago Insurance Company; Crum & Forester;
 
 [16]
 
 National Union Fire Insur-
 
 *372
 
 anee Company of Pittsburgh, PA;
 
 [17]
 
 Harbor Insurance Company;
 
 [18]
 
 INA of Texas;
 
 [19]
 
 Insurance Company of North America;
 
 [20]
 
 Interstate Fire & Casualty; London Guarantee & Accident of New York; National Surety; North Insurance Company of New York; Old Republic Insurance Company; Puritan Insurance Company; Republic Insurance Company;
 
 [21]
 
 The Continental Insurance Companies; and The Underwriters, Inc. for property contamination and remediation claims arising out of oil and gas exploration and production activities on the Brownell property. The foregoing insurers were alleged by OXY to have provided insurance coverage to Quintana Production for its operations, including the operations conducted by Quintana Production on the Brownell property.
 

 As part of its original petition, OXY further alleged that Quintana Production conducted exploration and production activities on the Brownell property pursuant to a 1979 Farmout Agreement between OXY’s predecessor-in-interest, Cities Service, and Corbin J. Robertson (“Robertson”), predecessor-in-interest to Quintana Production. The aforementioned agreement made specific reference to and covered oil and gas lease number 1-01X6-1706480 (“Lease No. 1706480”), dated April 1, 1971, which included the Brownell property. Pursuant to the terms of these agreements, Quintana Production was obligated to carry and maintain adequate insurance for its operations on the Brownell 17property, and to further indemnify and hold Cities Service harmless from all liability and damages arising from Quintana’s performance or non-performance of these agreements. OXY further alleged that although it settled the Brownell lawsuit on October 22, 2007, it has continued to incur costs in connection with the regulatory closure of the Brownell property pursuant to its settlement.
 

 After the filing of OXY’s original petition, numerous insurers named as defendants therein were later dismissed from this litigation by OXY without prejudice. Other insurers named as defendants (hereinafter collectively referred to as “defendant insurers”) in this matter filed multiple exceptions including peremptory exceptions raising the objection of no right of action based upon the corporate dissolution of their alleged insured, Quintana Production. Defendant insurers submitted evidence that Quintana Production, a Texas corporation, filed articles of dissolution with the Texas Secretary of State on November 24, 1997. The dissolution plan provided that dissolution and liquidation would be completed within twelve months after November 14, 1997, the date upon which the plan was adopted by the shareholders.
 

 Pursuant to the former Texas Business Corporation Act, Quintana Production con
 
 *373
 
 tinued to exist for three years after the date of dissolution to permit the survival of any existing claim by or against the dissolved corporation. It was alleged that Quintana Production ceased to exist on or before November 14, 2001, and all existing claims against Quintana Production were extinguished. The exceptions filed by the defendant insurers' asserted that OXY lacked a right of action pursuant to the Louisiana Direct Action Statute because OXY had no substantive cause of action against their insured, Quintana Production, at the time OXY filed its original petition on October 21, 2008.
 

 Prior to the October 26, 2009 hearing on the peremptory exceptions filed in response to OXY’s original petition, OXY, on October 16, 2009, filed a first supplemental and amended petition wherein it clarified the identities of certain previously-named defendant insurers and further named Quintana Petroleum Corporation (“Quinta-na Petroleum”) and Corbin J. Robertson, Jr., in his capacity as the Independent Executor of the Estate of Corbin J. Robertson, as additional defendants in this matter.
 

 | ^Through its first supplemental and amended petition, OXY alleged that its predecessor-in-interest, Cities Service, leased minerals on the Brownell property from the Brownell-Kidd Company in the 1970s. It also alleged that on December 10, 1979, Cities Service and Robertson entered into the 1979 Farmout and Operating Agreement, whereby Cities Service “farmed out” certain leases to Robertson, allowing Robertson to earn the right to acquire an interest in the leases as he drilled for oil and gas. Said agreements specifically referred to and covered oil and gas lease 1-01X6-1706480 (“Lease No. 1706480”), which included, among other property, the Brownell property situated in Section 23, Township 12 South, Range 12 East, in Assumption Parish, Louisiana.
 

 Additionally, OXY alleged Cities Service and other working interest owners entered into an Operating Agreement on September 2, 1981 (“1981 Operating Agreement”) with Quintana Petroleum to operate a gas well (“Well No. 182889”) on Lease No. 1706480. OXY alleged that Quintana Production, Quintana Petroleum, and Robertson, were the alter egos of each other and operated Well No. 182889 on the Brownell property from September 1982 until October 1990, when Quintana Petroleum plugged and abandoned the well. OXY also alleged that Cities Service, on May 6, 1988, executed an Assignment of Oil and Gas Leases (“Assignment”) to Robertson effective as of July 17, 1981. Said Assignment was made pursuant to and subject to the provisions of the 1979 Farmout and Operating Agreement and included Lease No. 1706480.
 

 OXY also alleged that Robertson, Quin-tana Production, and Quintana Petroleum each had a legal duty to perform their respective obligations under the 1979 Farmout and Operating Agreement and the 1981 Operating Agreement in good faith, fairly, and with due care so as to protect OXY and Brownell from suffering damage, contamination, or any other harm. Despite said obligations, OXY alleged that Robertson, Quintana Production, and Quintana Petroleum conducted their operations on the Brownell property in a negligent, grossly negligent, willful, imprudent, and/or reckless manner.
 

 OXY further alleged that the 1979 Farmout and Operating Agreement between Cities Service and Robertson, and the 1981 Operating Agreement between Cities Service and Quintana Petroleum obligated Robertson, Quintana Production, and Quintana | ¡Petroleum to obtain and maintain in force policies of liability insur-
 
 *374
 
 anee with defendant insurers covering their liability for acts and omissions arising out of their activities on the Brownell property. OXY claimed at all times relevant hereto defendant insurers had in full force and effect policies of liability insurance covering the negligence, fault, reckless acts, and/or omissions of Robertson, Quintana Production, and Quintana Petroleum, and that said defendant insurers are answerable to OXY as solidary obligors pursuant to the provisions of the Louisiana Direct Action Statute, La. R.S. 22:1269.
 

 In conclusion, OXY, as part of its first supplemental and amended petition, alleged that Robertson, Quintana Production, and Quintana Petroleum failed to recognize their obligations as solidary ob-ligors with OXY and had refused to reimburse OXY for their virile share of all sums expended by OXY to settle in full all claims, damages, and losses incurred and claimed by Brownell.
 

 Despite the filing of OXY’s first supplemental and amended petition, the trial court, on October 26, 2009, nevertheless heard arguments on the objections of no right of action filed on behalf of the defendant insurers with respect to OXY’s original petition for damages. At the hearing on the exceptions, the trial court, for reasons orally assigned, granted the objections of no right of action filed by the defendant insurers as to OXY’s original petition for damages. A judgment to this effect was signed on January 20, 2010.
 
 [22]
 

 In response to OXY’s first supplemental and amended petition filed on October 16, 2009, the defendant insurers again filed peremptory exceptions pleading no right of action, no cause of action, and prescription. Following a hearing on January 25, 2010, the trial court, again for reasons orally assigned, similarly sustained the objections of no right of action and no cause of action filed by the defendant insurers, and judgments to this [ineffect were signed on February 24, 2010 and April 20, 2010 respectively.
 
 [23]
 
 The April 20, 2010 judgment is not before us on this appeal and will not be addressed by this court in this opinion, but will be addressed in a separate writ action in
 
 OXY USA, Inc. v. Quintana Production Company, et al.,
 
 No. 2010 CW 1307.
 

 In maintaining the defendant insurers’ objections of no right of action, the judgment of the trial court provided in pertinent part:
 

 After reviewing the pleadings relating to this issue and considering the oral argument of counsel and applicable law, it is hereby ORDERED, ADJUDGED AND DECREED:
 

 That: (1) the Texas Business Corporation Survival statute provides that all claims against a dissolved corporation are extinguished unless the claim arose prior to dissolution and an action is brought on the claim within three years from the date of dissolution; (2) it is undisputed that the claims against the exceptors’ alleged insureds, Quintana
 
 *375
 
 Production Company and Quintana Petroleum Corporation, were brought more than three years after the date of each entities’ dissolution; (3) the plaintiff does not have a substantive claim against Quintana Production Company and/or Quintana Petroleum Corporation because all such claims were either extinguished or could not arise as a result of dissolution of the two Quintana entities; and (4) plaintiff has no procedural right of direct action against the Insurers because the plaintiff has no substantive cause of action against the insureds, Quintana Production Company and Quintana Petroleum Corporation.
 

 Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that the
 
 Insurers’ Peremptory Exception of No Right of Action
 
 is MAINTAINED, dismissing plaintiffs claims against the Insurers, in their capacity as the insurers of Quintana Production Company and Quintana Petroleum Corporation, as set forth in Plaintiffs First Supplemental and Amending Petition in their entirety, with prejudice, and at plaintiffs costs.
 

 On February 10, 2010, OXY applied for supervisory writs from this court in response to the trial court’s maintenance of the objections of no right of action filed in response to OXY’s original petition for damages. Later, on March 24, 2010 and June 8, 2010, OXY again sought supervisory writs from this court in connection with the trial court’s maintenance of the objections of no right of action and no cause of action filed in response to OXY’s first amended and supplemental petition for damages.
 

 | nBoth writ requests were decided by this court on August 5, 2010.
 
 [24]
 
 This court, unaware that the two writ requests were interrelated and indispensable to a proper disposition of this matter, held that both judgments signed by the trial court sustaining the defendant insurers’ objections of no right of action were final, appealable judgments. Accordingly, these matters were remanded to the trial court with instructions to convert the writs sought by OXY to appeals.
 

 On August 17, 2010, OXY filed a timely motion seeking a devolutive appeal of the trial court’s January 20, 2010 judgment sustaining the objections of no right of action filed by defendant insurers in response to OXY’s original petition for damages. Said appeal was docketed as
 
 OXY USA, Inc. v. Quintana Production Company, et al.,
 
 2011 CA 0046 (La.App. 1 Cir.) and was decided by this court this date. Also on August 17, 2010, OXY filed a motion seeking a devolutive appeal of the trial court’s February 24, 2010 judgment sustaining the objections of no right of action filed by defendant insurers in response to OXY’s first amended and supplemental petition for damages. Said appeal was docketed as
 
 OXY USA Inc. v. Quintana Production Company, et al.,
 
 2011 CA 0047 (La.App. 1 Cir.) and is the matter presently before this court.
 

 At present, the following insurers remain as defendants in this case: Admiral Insurance Company; American General Companies; Certain Underwriters at Lloyd’s, London; Chicago Insurance Company; First State Insurance Company; Granite State Insurance Company; Hartford Accident & Indemnity Company; Interstate Fire & Casualty; National Surety Corporation; Northern Insurance Company of New York; Old Republic Insurance Company; Puritan Insurance Company; TIG Insurance Company; Twin Cities
 
 *376
 
 Fire Insurance Company; and Valiant Insurance Company.
 

 ISSUES PRESENTED FOR REVIEW
 

 In connection with its appeal in this matter, OXY presents the following issues for review and determination by this court:
 

 1. Whether the corporate status of a non-excepting corporate defendant may be decided through an exception of no right of action?
 

 |1⅞2. Whether OXY’s suit against the insurers met the requirements of the Direct Action Statute?
 

 3. Whether a plaintiff has the right to assert a cause of action against the insurer of an insured Texas corporation that is allegedly dissolved?
 

 4. Whether an insurer is immune from suit when its corporate insured may assert a defense that is strictly personal to the insured?
 

 NO RIGHT OF ACTION
 

 Generally an action can only be brought by a person having a real and actual interest that he asserts. La.Code Civ. P. art. 681. The peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted.
 
 See
 
 La.Code Civ. P. art. 927(A)(6). Simply stated, the objection of no right of action tests whether this particular plaintiff, as a matter of law, has an interest in the claim sued on.
 
 Louisiana State Bar Association v. Carr and Associates, Inc.,
 
 2008-2114, p. 8 (La.App. 1 Cir. 5/8/09), 15 So.3d 158, 165;
 
 writ denied,
 
 2009-1627 (La.10/30/09), 21 So.3d 292. The exception does not raise the question of the plaintiffs ability to prevail on the merits nor the question of whether the defendant may have a valid defense.
 
 Falcon v. Town of Berwick,
 
 2003-1861, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1222, 1224. Unlike the objection of no cause of action, evidence supporting or controverting an objection of no right of action is admissible for the purpose of showing that the plaintiff does not possess the right he claims or that the right does not exist.
 
 Robertson v. Sun Life Financial,
 
 2009-2275, p. 6 (La.App. 1 Cir. 6/11/10), 40 So.3d 507, 511;
 
 Thomas v. Ardenwood Properties,
 
 2010-0026, p. 6 (La.App. 1 Cir. 6/11/10), 43 So.3d 213, 218,
 
 writ denied.
 
 2010-1629 (La.10/8/10), 46 So.3d 1271,
 
 quoting Falcon,
 
 2003-1861 at p. 3, 885 So.2d at 1224. The party raising a peremptory exception bears the burden of proof.
 
 Falcon,
 
 2003-1861 at p. 3, 885 So.2d at 1224. To prevail on a peremptory exception pleading the objection of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit.
 
 Id.
 
 Whether a plaintiff has a right of action is ultimately a question of law; therefore, it is reviewed
 
 de novo
 
 on appeal.
 
 Torbert Land Co., L.L.C. v. Montgomery,
 
 2009-1955, p. 4 (La.App. 1 Cir. 7/9/10), 42 So.3d 1132, 1135,
 
 writ denied,
 
 2010-2009 (La.12/17/10), 51 So.3d 16.
 

 | ^ANALYSIS
 

 Admissibility of Evidence regarding Dissolution
 

 The initial issue raised by OXY in connection with its appeal in this matter questions whether the corporate status of a non-excepting corporate defendant may be decided by means of a peremptory exception l'aising the objection of no right of action. OXY urges that the trial court erred in relying upon or even considering evidence at the hearing regarding the dis-solutions of the Quintana companies.
 

 At the hearing on the exception, the defendant insurers introduced documents
 
 *377
 
 previously filed by Quintana Production in the office of the Texas Secretary of State, including Articles of Dissolution, Joint Written Consent of the Shareholders and Directors to Dissolve, and the Plan of Complete Liquidation and Dissolution, together with a document from the Texas Comptroller captioned “Certification of Account Status.” The defendant insurers also introduced copies of Articles of Dissolution that Quintana Petroleum filed with the Texas Secretary of State. The defendant insurers cite
 
 Marsh Engineering, Inc. v. Parker,
 
 2004-0509, p. 11 (La.App. 3 Cir. 9/29/04), 883 So.2d 1119, 1127, writ
 
 denied,
 
 2004-2669 (La.1/28/05), 893 So.2d 73, and argue that if OXY’s substantive cause of action against their insureds, the Quintana companies, has been extinguished, OXY’s procedural right of direct action against them, which is purely remedial and ancillary to the cause, must fall by operation of law.
 

 OXY contends that the evidence admissible in a hearing on an objection of no right of action is limited to testing the plaintiffs interest in the action and the plaintiffs right to bring the claims asserted in the suit. Accordingly, OXY claims the trial court erred in considering evidence regarding a corporate defendant’s dissolution at the hearing on defendant insurers’ peremptory exceptions raising the objection of no right of action.
 

 We disagree. It is clear from the jurisprudence that a mover seeking to prevail on an objection of no right of action may introduce evidence in an effort to show that the plaintiff does not have an interest in the subject matter of the suit or the legal capacity to proceed with the suit. Evidence offered to prove that OXY no longer has a procedural |14right to proceed against defendant insurers due to the dissolution under Texas law of the Quintana companies is clearly admissible. This issue is without merit.
 

 Louisiana Direct Action Statute
 

 The second issue raised by OXY in connection with its appeal in this matter questions whether OXY’s suit against the defendant insurers met the requirements of the Direct Action Statute. The Louisiana Direct Action Statute, La. R.S. 22:1269, allows a tort victim to sue both the insured and its insurer, as a solidary obligor, or the insurer alone, when certain conditions set forth in the statute are met. La. R.S. 22:1269(B). The direct action statute does not create an independent cause of action against the insurer. It merely grants a procedural right of action against the insurer when the plaintiff has a substantive cause of action against the insured.
 
 Marsh Engineering,
 
 2004-0509 at p. 11, 883 So.2d at 1127.
 

 This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. La. R.S. 22:1269(B)(2).
 

 In the instant case, OXY brought its suit against both the insureds and defendant insurers seeking contribution and/or indemnity for property contamination and remediation claims on the Brownell property in Louisiana.
 

 Louisiana jurisprudence has consistently held that the Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured.
 
 Green v. Auto Club Group Insurance Company,
 
 2008-2868, p. 3 (La.10/28/09), 24 So.3d 182, 184;
 
 Cacamo v. Liberty Mutual Fire Insurance Company,
 
 1999-3479, 1999-3480, 1999-3481, pp.
 
 *378
 
 2-3 (La.6/30/00), 764 So.2d 41, 43;
 
 Descant v. Administrators of Tulane Educational Fund,
 
 1993-3098, p. 3 (La.7/5/94), 639 So.2d 246, 249. Defendant insurers cite
 
 Marsh Engineering,
 
 2004-0509 at p. 11, 883 So.2d at 1127 and
 
 Bourque v. Lehmann Lathe, Inc.,
 
 476 So.2d 1129, 1131 (La.App. 3 Cir.),
 
 writ denied,
 
 479 So.2d 362 (La.1985), for the proposition that when the injured party’s substantive cause of action against the original tortfeasor is | ^extinguished, the procedural right of direct action against the insurer, which is purely remedial and ancillary to the cause, must fall by operation of law.
 

 We agree that OXY’s suit against the defendant insurers met the requirements of the Louisiana Direct Action Statute. We must now examine whether OXY possessed a procedural right of action to assert claims against said insurers pursuant to the Louisiana Direct Action Statute in light of. the dissolution of the Quintana companies and the “extinguishment of all claims against the insureds” pursuant to Texas corporate dissolution law.
 

 Right of Action against Insurers of Dissolved Texas Corporations
 

 The next issue raised by OXY in connection with its appeal in this matter questions whether a plaintiff such as OXY has the right to assert a cause of action against the insurer of a Texas corporation that is allegedly dissolved.
 

 In them brief to this court, defendant insurers argue that OXY’s only stated basis for its claims against them is the Louisiana Direct Action Statute, which provides a procedural right to sue an insurer where a plaintiff has a substantive cause of action against the insured. In determining whether a cause of action may be brought in Louisiana courts against a dissolved Texas corporation, defendant insurers cite and rely upon
 
 Leviathan Gas Pipeline Company v. Texas Oil & Gas Corporation,
 
 620 So.2d 415, 418 (La.App. 3 Cir.1993) for its proposition that inasmuch as Article 7.12 of the former Texas Business Corporation Act
 
 [25]
 
 has been held to be substantive, Texas law, as the law of the state of incorporation, is the applicable law.
 

 Article 7.12 of the former Texas Business Corporation Act provided that an existing claim by or against a dissolved corporation would be extinguished unless an action or proceeding on such a claim was brought within three years from the date of corporate dissolution. Defendant insurers argue that pursuant to said provision, all claims brought by OXY against their insureds, Quintana Production and Quinta-na Petroleum, were | ^extinguished three years after the date each corporation filed its respective dissolution documents with the Texas Secretary of State. Defendant insurers further argue that after considering evidence regarding the dissolution of Quintana Production and Quintana Petroleum and that all claims against said companies had been extinguished pursuant to Texas law, the trial court correctly concluded that OXY lacked the requisite procedural capacity to proceed with its direct action claims against said companies and accordingly dismissed OXY’s direct action claims.
 

 OXY argues that the trial court erred in sustaining a peremptory exception raising the objection of no right of action based upon the affirmative defense that claims against Quintana Production and Quintana Petroleum were extinguished three years
 
 *379
 
 after the dissolutions of the Quintana companies. OXY argues that the Texas statute’s three-year period for filing claims against a dissolved corporation is not equivalent to a peremptive period under Louisiana law.
 

 Pursuant to Louisiana law, a per-emptive statute totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced.
 
 Marsh Engineering,
 
 2004-0509 at p. 12, 883 So.2d at 1127. The concept of peremption is often confused with the related concept of prescription. The Louisiana Supreme Court has set forth the differences between per-emption and prescription as follows:
 

 Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation. (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right. (La. Civ. Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as
 
 contra non valentem
 
 are not applicable. As an inchoate right, prescription, on the other hand may be renounced, interrupted, or suspended; and
 
 contra non valentem
 
 applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.
 

 State Board of Ethics v. Ourso,
 
 2002-1978, p. 4 (La.4/9/03), 842 So.2d 346, 349,
 
 quoting Reeder v. North,
 
 1997-0239, pp. 12-13 (La.10/21/97), 701 So.2d 1291, 1298.
 

 |17Because the Louisiana Civil Code does not provide guidance on how to determine whether a particular time limitation is prescriptive or peremptive, the supreme court “has resorted to an exploration of the legislative intent and public policy underlying a particular time limitation.”
 
 State of Louisiana, Division of Administration v. McInnis Brothers Construction,
 
 1997-0742, p. 4 (La.10/21/97), 701 So.2d 937, 940. Thus, courts look to the language of the statute, the purpose behind the statute, and the public policy mitigating for or against suspension, interruption, or renunciation of that time limit to determine its nature as prescriptive or peremptive.
 
 State Board of Ethics,
 
 2002-1978, p. 5 (La.4/9/03), 842 So.2d at 349.
 

 The defendant insurers claim that Article 7.12 of the former Texas Business Corporation Act is clearly a peremptive statute as the unpreserved rights of action against a dissolved corporation are completely destroyed upon the expiration of the three-year period for filing suits. Defendant insurers further claim that Louisiana’s corporate liquidation statute, La. R.S. 12:147, provides a similar, three-year period for filing suits.
 

 Louisiana Revised Statute 12:147 provides, in pertinent part, as follows:
 

 § 147. Claims against corporation in liquidation; peremption
 

 [[Image here]]
 

 B. After the proceeding for dissolution has taken effect, notice thereof shall be ... given ... to all known creditors of, to all persons believed to have valid and subsisting claims ... against ... the corporation.... Such notice shall call on the addressees to present their claims in writing and in detail, at a specified place and by a specified date, not less than six months after the notice was mailed. The giving and publication
 
 *380
 
 of such notice shall not be deemed an acknowledgement of the validity of any claim against the corporation, waiver of any defense or set-off to any such claim, interruption of prescription on, or tolling of any statute of limitation applicable to, any such claim, or revival of any claim which has been barred by any prescription, peremption or statute of limitations.
 

 C. If any addressee of such notice shall not present his claim or claims as prescribed in the notice, such of his claims as would be enforceable against the corporation ... shall, unless suit has been entered thereon in a court of competent jurisdiction before the final date prescribed in the notice for presentation thereof, be perpetually and peremptorily barred,
 
 except to the extent, if any, that the court may allow them against any remaining undistributed assets of the corporation on a finding that the claimant had some valid excuse for his failure so to present his claim.
 

 D. All claims which would be enforceable by suit against the corporation ... on which suit has not been filed in a court of competent jurisdiction 118before the expiration of three years after the proceeding for dissolution takes effect ... shall be barred perpetually and peremptorily.
 

 E. The time limits provided in subsections C and D of this section shall not be subject to suspension on any ground, or to interruption except by timely presentation of the claim as to subsection C or timely suit as to subsection D.
 

 La. R.S. 12:147 (underscoring supplied).
 

 Article 7.12 of the former Texas Business Corporation Act provided, in pertinent part, as follows:
 

 Art. 7.12. Limited Survival After Dissolution
 

 A. A dissolved corporation shall continue its corporate existence for a period of three years from the date of dissolution, for the following purposes:
 

 (1) prosecuting or defending in its corporate name any action or proceeding by or against the dissolved corporation;
 

 (2) permitting the survival of any claim by or against the dissolved corporation;
 

 (3) holding title to and liquidating any properties or assets that remained in the dissolved corporation at the time of, or are collected by the dissolved corporation after, dissolution, and applying or distributing those properties or assets, or the proceeds thereof, as provided in Subsections (3) and (4) of Section A of Article 6.04 of this Act; and
 

 (4) settling any other affairs not completed before dissolution.
 

 However, a dissolved corporation may not continue its corporate existence for the purpose of continuing the business or affairs for which the dissolved corporation was organized.
 

 B. During the three-year period, the members of the board of a dissolved corporation serving at the time of dissolution or the majority of them then living, however reduced in number, or their successors selected by them, shall continue to manage the affairs of the dissolved corporation for the limited purposes specified in this Article and shall have the powers necessary to accomplish those purposes. In the exercise of those powers, the directors shall have the same duties to the dissolved corporation that they had immediately prior to the dissolution and shall be liable to the dissolved corporation for actions taken by them after the dissolution to the same extent that
 
 *381
 
 they would have been liable had those actions been taken by them prior to the dissolution.
 

 C. A corporation shall not be liable for any claim other than an existing claim. An existing claim by or against a dissolved corporation shall be extinguished unless an action or proceeding on such existing claim is brought before the expiration of the three-year period following the date of dissolution. If an action or proceeding on an existing claim by or against a dissolved corporation is brought before the expiration of the three-year period following the date of dissolution and such existing |19claim was not extinguished pursuant to Section D of this Article, the dissolved corporation shall continue to survive (1) for purposes of that action or proceeding until all judgments, orders, and decrees therein have been fully executed, and (2) for purposes of applying or distributing any properties or assets of the dissolved corporation as provided in Subsections (3) and (4) of Section A of Article 6.04 of this Act until such properties or assets are so applied or distributed.
 

 D. A dissolved corporation may give written notice to a person having or asserting an existing claim against the dissolved corporation to present such existing claim to the dissolved corporation in accordance with the notice. The notice shall be sent by registered or certified mail, return receipt requested, to the person having or asserting the existing claim at such person’s last known address, and the notice shall:
 

 (1)state that such person’s claim against the dissolved corporation must be presented in writing to the dissolved corporation on or before the date stated in the notice, which shall be not earlier than 120 days after the date the notice is sent to such person;
 

 (2) state that the written presentation of the claim must describe such claim in sufficient detail to reasonably inform the dissolved corporation of the identity of such person and of the nature and amount of the claim;
 

 (3) state a mailing address where the written presentation of the person’s claim against the dissolved corporation is to be sent;
 

 (4) state that if the written presentation of the claim is not received at such address on or before the date stated in the notice, the claim will be extinguished; and
 

 (5) be accompanied by a copy of this Section D.
 

 If a written presentation of such person’s claim against the dissolved corporation that meets the requirements of this section is received at the address of the dissolved corporation stated in the notice on or before the date stated in the notice, the dissolved corporation may thereafter give written notice to such person that such claim is rejected by the dissolved corporation. The notice shall be sent by registered or certified mail, return receipt requested, addressed to such person at such person’s last known address, and the notice shall state:
 

 (1) that such claim is rejected by the dissolved corporation;
 

 (2) that such claim will be extinguished unless an action or proceeding on such claim is brought within 180 days after the date such notice of rejection was sent to such person and before the expiration of the three-year period following the date of dissolution; and
 

 (3) the date such notice of rejection was sent and the date of dissolution.
 

 
 *382
 
 Such person’s claim against the dissolved corporation shall be extinguished if (a) a written presentation of that claim meeting the requirements of this section is not received at the address of the dissolved corporation stated in the notice to such person on or before the date stated in the notice or (b) an action or proceeding on such claim is not brought within 180 days after 12nthe date a notice of rejection was sent to such person and before the expiration of the three-year period following the date of dissolution.
 

 E. A dissolved corporation that was dissolved by the expiration of the period of its duration may, during the three-year period following the date of dissolution, amend its articles of incorporation by following the procedure prescribed in this Act to extend or perpetuate its period of existence. That expiration shall not of itself create any vested right on the part of any shareholder or creditor to prevent such an action. No act or contract of such a dissolved corporation during a period within which it could have extended its existence as permitted by this Article, whether or not it has taken action so to extend its existence, shall be in any degree invalidated by the expiration of its period of duration.
 

 F. In this Article:
 

 (1)The term “dissolved corporation” means a corporation (a) that was voluntarily dissolved by the issuance of a certificate of dissolution by the Secretary of State and was not issued a certificate of revocation of dissolution pursuant to Section C of Article 6.05 of this Act, (b) that was involuntarily dissolved by the Secretary of State and was not reinstated pursuant to Section E of Article 7.01 of this Act, (c) that was dissolved by decree of a court when the court has not liquidated all the assets and business of the corporation as provided in this Act, (d) that was dissolved by the expiration of its period of duration and has not revived its existence as provided in this Act, or (e) whose charter was forfeited pursuant to the Tax Code, unless the forfeiture has been set aside.
 

 (2) The term “claim” means a right to payment, damages, or property, whether liquidated or unliquidated, accrued or contingent, matured or unmatured.
 

 (3) The term “existing claim” means a claim that existed before dissolution and is not otherwise barred by limitations or a contractual obligation incurred after dissolution.
 

 Tex. Bus. Corp. Act, art. 7.12.
 

 Texas courts have held that Article 7.12 of the former Texas Business Corporation Act is a survival statute, rather than a statute of limitations.
 
 Martin v. Texas Woman’s Hospital, Inc.,
 
 930 S.W.2d 717, 720 (Tex.App.-Houston 1996). In
 
 Martin,
 
 the Texas Appellate Court discussed the distinction between a statute of limitations and a survival statute and stated:
 

 a statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute. These survival statutes arbitrarily extend the life of the corporation to allow remedies connected with the corporation’s existence to be asserted.
 

 J21Id., quoting Davis v. St. Paul Fire & Marine Insurance Company,
 
 727 F.Supp. 549, 551 (D.S.D.1989) (citations omitted).
 

 A survival statute creates a right or claim that would not exist apart from the statute.
 
 Id., quoting M.S. v. Dinkytown
 
 
 *383
 

 Day Care Center, Inc.,
 
 485 N.W.2d 587, 589 (S.D.1992).
 

 When a plaintiff fails to sue within the limitations period, the claim still exists, but, unless the statute of limitations affirmative defense is waived, it can no longer be brought against a defendant. By contrast, if a party fails to sue within the time limits of the survival statute, there is no longer an entity which can be sued. After its dissolution, a corporation cannot be revived by a statute of limitations tolling provision, no matter how sweeping its reach.
 
 Id.
 
 at 721.
 

 The survival statute provides benefits for both the claimant and for the dissolved corporation. The claimant is allowed to sue a dissolved corporation for three years after its dissolution, which he could not do at common law. The corporation’s benefit is that its potential liability is not unlimited, but is terminated in three years. In order to enjoy these respective benefits, both the claimant and the corporation must meet certain requirements. The claimant must sue within three years of the dissolution, and the corporation must have given notice of its dissolution to all known claimants, under Texas Business Corporation Act, article 6.04.
 
 Id.
 

 Article 6.04 of the former Texas Business Corporation Act provided, in pertinent part, as follows:
 

 Art. 6.04. Procedure Before Filing Articles of Dissolution
 

 A. Before filing articles of dissolution:
 

 (2) The corporation shall cause written notice by registered or certified mail of its intention to dissolve to be mailed to each
 
 known claimant
 
 against the corporation.
 

 Tex. Bus. Corp. Act, art. 6.04(A)(2) (Underscoring supplied).
 

 OXY did not commence the instant action seeking contribution and/or indemnity from Quintana Production until October 2008. Quintana Production allegedly filed for corporate dissolution in 1998. It is apparently undisputed that OXY did not sue Quintana_j2gProduction within three years of its dissolution as required by the survivorship provision of former Texas Business Corporation Act, Article 7.12. Similarly, it is undisputed that Quin-tana Production did not give notice of its dissolution to OXY via registered mail as required by former Texas Business Corporation Act, Article 6.04(A)(2). Thus, if OXY was a known claimant, OXY could file suit against Quintana Production despite the lapse of more than three years since the corporate dissolution of Quintana Production. Conversely, if OXY was an unknown claimant, Quintana Production was not statutorily obligated to notify it of its dissolution and OXY is time-barred from filing suit against Quintana Production.
 

 The underlying Brownell lawsuit against OXY, Quintana Production, and other defendants that sought damages for contamination and remediation of the Brownell property was not filed until October 26, 2004. As part of its original petition, Brownell alleged that it “did not have actual or constructive knowledge of the pollution described herein until less than one year prior to the filing of this suit.”
 
 [26]
 
 Thus, if Brownell was unaware of the damage to its property prior to October 2003, then surely OXY, a defendant named in the Brownell lawsuit, possessed no knowledge of its culpability until such time as OXY was named as a defendant in October
 
 *384
 
 2004. OXY did not commence the present litigation seeking contribution and/or indemnity from Quintana Production until October 2008, some ten years following the corporate dissolution of Quintana Production.
 

 Clearly, OXY did not become a potential known claimant of Quintana Production until October 22, 2007, the date OXY agreed to settle the Brownell litigation. Thus, Quintana Production was not statutorily obligated to notify OXY prior to its corporate dissolution in 1998, and we conclude that OXY is time-barred from filing suit against Quintana Production.
 

 Quintana Petroleum allegedly filed for corporate dissolution in July 2003. Although Quintana Petroleum was not named as a defendant in the Brownell litigation, OXY named Quintana Petroleum as an additional defendant in its First Supplemental and Amended Petition filed on October 16, 2009. Again, Quintana Petroleum was not statutorily | ¡¿.¡obligated to notify OXY prior to its corporate dissolution in July 2003, therefore; we similarly conclude that OXY is time-barred from filing suit against Quintana Petroleum.
 

 In its brief to this court, OXY raises for the first time on appeal the issue of whether Brownell was entitled to receive notice of the respective dissolutions of Quintana Production and Quintana Petroleum. OXY claims that the trial court’s dismissal of its claims against defendant insurers through an objection of no right of action “unfairly prejudices OXY and prevents it from fully litigating its claims against both the Quintana companies and their Insurers for the claims alleged in OXY’s original and First Supplemental and Amended Petition for Damages.” We disagree. In addition to the reasons set forth above, we note that these new arguments were not raised by OXY at the trial court level, and consequently may not be raised for the first time on appeal.
 
 Uniform Rules of the Court of Appeal,
 
 Rule 1-3.
 

 Based upon the foregoing analysis, we conclude that although Article 7.12 of the former Texas Business Corporation Act is a survival statute, rather than a statute of limitations, the three-year, post-dissolution survival period allowed under the former Texas Business Corporation Act may not serve as a basis for OXY’s suit absent a failure on the part of the Quintana companies to provide the requisite notice to
 
 knoum
 
 claimants. OXY was not a
 
 known
 
 claimant. This issue is without merit.
 

 Insurer’s immunity from suit when a corporate insured asserts a personal defense
 

 In its final issue, OXY argues that even assuming corporate dissolution afforded the Quintana companies the right to plead extinguishment of all pending claims, such a defense is personal to the Quintana companies and does not confer similar immunity on the defendant insurers that insured the Quintana companies. In support of this position, OXY cites and relies upon
 
 Marcel v. Delta Shipbuilding Company,
 
 2010-0168, p. 8 (La.App. 4 Cir. 8/4/10), 45 So.3d 634, 640, for the well-settled proposition that if immunity is purely personal, an insurer is not entitled to plead such immunity as a defense under the direct action statute. Accordingly, OXY claims it is free to proceed against the defendant insurers pursuant to the Louisiana Direct Action Statute (La. R.S. 22:1269).
 

 1 {.¿Defendant insurers argue in response that such an argument is not only inconsistent with Texas law, but is also contradicted by well-settled Louisiana law regarding the peremption of claims. As defendant insurers point out in their brief to this court, the issue before the fourth circuit in
 
 Marcel
 
 was whether the pre-1969 version
 
 *385
 
 of Louisiana’s corporate dissolution statute barred plaintiffs, whose survival actions accrued before 1969, from bringing a direct action against certain insurers.
 

 Defendant insurers agree that the fourth circuit was correct when it noted that unlike the corporate law that took effect in 1969, and the present dissolution statute (La. R.S. 12:147), the pre-1969 dissolution statute (Act 128 of 1928) was silent as to the extinguishment of claims and simply provided a mechanism for the dissolution of a corporation.
 
 Marcel,
 
 2010-0168, p. 5 (La.App. 4 Cir. 8/4/10), 45 So.3d at 638. In
 
 Marcel,
 
 the fourth circuit ultimately held that “in the absence of any statutory language or judicial precedent indicating that the cause of action in the instant case was extinguished by the dissolution of [the corporate defendant], such that it may not now be asserted against [the corporate defendant’s] insurer, we cannot agree with the trial court’s decision” to grant the objection of no right of action raised by the corporate defendant’s insurer and dismiss the plaintiffs suit.
 
 See, Marcel,
 
 2010-0168, p. 7 (La.App. 4 Cir. 8/4/10), 45 So.3d at 639. Accordingly, the fourth circuit reversed the judgment of the trial court and held that under the law that existed prior to 1969, the plaintiffs survival action was not extinguished or preempted by the dissolution of the corporate defendant thereby enabling the plaintiff to proceed directly against the insurer of the dissolved corporation.
 

 We agree with defendant insurers that the facts of
 
 Marcel
 
 are not the same as those presented here. This issue is also without merit.
 

 CONCLUSION
 

 We decline to say that Article 7.12 of the former Texas Business Corporation Act is equivalent to a peremption statute under Louisiana law. As we have previously noted, a peremptive statute under Louisiana law totally destroys the right previously existing with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced. While the same result is generally true under the |2STexas statute, there is an exception where a known claimant who fails to receive the prescribed notice of the corporation’s dissolution, may file suit against a dissolved corporation despite the lapse of more than three years since dissolution of the corporation. Nevertheless, such a finding does not change the result in this case. All claims against the dissolved corporations were extinguished, and to maintain a right of direct action against an insurer, a claimant must possess a substantive cause of action against the insured.
 

 In the present case, all existing claims against Quintana Production and Quintana Petroleum were extinguished as a result of their respective dissolutions under Texas law. OXY clearly failed to institute suit against the Quintana companies within the three-year survival period or satisfactorily demonstrate that OXY was a known creditor which failed to receive notice of the respective dissolutions of the Quintana companies. Accordingly, OXY’s claims against defendant insurers of Quintana were similarly extinguished.
 

 Our ruling this date should not be construed as extinguishing OXY’s claims against defendant Corbin J. Robertson, Jr., in his capacity as the Independent Executor of the Estate of Corbin J. Robertson, or those defendant insurers who were also insurers of Robertson.
 
 [27]
 

 
 *386
 
 DECREE
 

 For the above and foregoing reasons, the judgment of the trial court is affirmed with respect to its dismissal of OXY’s claims against Quintana Production, Quin-tana Petroleum, and their respective insurers; however, the trial court’s judgment is reversed to the extent said judgment dismissed those claims put forth by OXY against Robertson or the insurers of Robertson. Accordingly, this matter is remanded to the trial court for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 KUHN, J., concurs.
 

 [1]
 

 . OXY subsequently filed a motion on October 21, 2009, dismissing defendant, The Continental Insurance Company, f/k/a Fidelity and Casualty Company of New York, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [2]
 

 . OXY subsequently filed a motion on October 21, 2009, dismissing defendant, Allianz Underwriters Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [3]
 

 .OXY subsequently filed motions on October 21, 2009 and November 3, 2009, dismissing defendant, Travelers Casualty and Insurance Company, f/k/a Aetna Casualty Surety Compa
 
 *371
 
 ny, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [4]
 

 . OXY subsequently filed a motion on August 12, 2009, dismissing defendant, Highlands Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [5]
 

 . OXY subsequently filed a motion on August 14, 2009, dismissing defendant, Safety National Casualty Corporation (sued herein as Safety Mutual Casualty Corporation), without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [6]
 

 . OXY subsequently filed a motion on June 8, 2010, dismissing defendant, Lexington Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [7]
 

 . OXY subsequently filed a motion on August 12, 2009, dismissing defendant, Government Employees Insurance Company (GEICO), without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [8]
 

 . OXY subsequently filed a motion on October 21, 2009, dismissing defendant, Gibraltar Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [9]
 

 . OXY subsequently filed a motion on November 17, 2009, dismissing defendant, Associated International Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [10]
 

 . OXY subsequently filed a motion on August 26, 2009, dismissing defendant, Federal Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [11]
 

 . OXY subsequently filed a motion on August 12, 2009, dismissing defendant, John L. Wort-ham and Son, L.P., without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [12]
 

 . OXY subsequently filed a motion on August 12, 2009, dismissing defendant, American International Group (“AIG”), without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [13]
 

 . OXY subsequently filed a motion on June 8, 2010, dismissing defendant, AIU Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [14]
 

 . OXY subsequently filed a motion on August 12, 2009, dismissing defendant, American Centennial Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [15]
 

 . Defendant Century Indemnity Company was incorrectly designated herein as California Union Insurance Company.
 

 [16]
 

 . OXY subsequently filed motions on January 28 and February 10, 2010, dismissing defendant, Crum & Forster Insurance Company (incorrectly designated herein as Crum & Forester), without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [17]
 

 . OXY subsequently filed a motion on June 8, 2010, dismissing defendant, National Union Fire Insurance Company of Pittsburgh, Pa., without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [18]
 

 . OXY subsequently filed a motion on October 21, 2009, dismissing defendant, Harbor Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [19]
 

 . Defendant ACE American Insurance Company was incorrectly designated herein as INA of Texas.
 

 [20]
 

 . Defendant Century Indemnity Company was incorrectly designated herein as Insurance Company of North America.
 

 [21]
 

 . OXY subsequently filed a motion on August 12, 2009, dismissing defendant, Republic Insurance Company, without prejudice, and specifically reserving its rights against all remaining defendants.
 

 [22]
 

 . In this court’s related opinion in
 
 OXY USA, Inc. v. Quintana Production Company, et al.
 
 (an unpublished opinion), 2011 CA 0046 (La.App. 1 Cir. 10/19/11), 2011 WL 4965032, we noted that the trial court erred in hearing said exceptions due to the interim filing by OXY of a supplemental and amended petition that named additional defendants. While noting that pursuant to La.Code Civ. P. art. 1153, an amended petition relates back to the filing date of the original petition, we nevertheless affirmed the trial court's maintenance of the peremptory exceptions, but only as to the defunct Quintana Production and Quintana Petroleum, but not as to Robertson and his alleged insurers.
 

 [23]
 

 . The trial court considered the peremptory exception raising the objection of prescription and referred same to the merits on the issue of whether OXY was at fault only. In other respects the exception was denied.
 

 [24]
 

 .
 
 OXY USA, Inc. v. Quintana Production Company, et al.,
 
 2010 CW 0638, 2010 CW 0746 (La.App. 1 Cir. 8/5/10) (unpublished writ actions).
 

 [25]
 

 . Effective Jan. 1, 2010, the provisions of the former Texas Business Corporation Act are contained within the Texas Business Organizations Act, V.T. C.A., Business Organizations Code § 1.001
 
 et seq.
 
 As all relevant events in this case took place under the former Texas Business Corporation Act, all references found herein are to that former Act.
 

 [26]
 

 . A copy of Brownell's petition for damages was attached to and made a part of OXY's original petition as “Exhibit A.”
 

 [27]
 

 . OXY named Corbin J. Robertson, Jr., in his capacity as the Independent Executor of the Estate of Corbin J. Robertson, as a defendant via its First Supplemental and Amended Peti
 
 *386
 
 tion filed on October 16, 2009. OXY alleged in its First Supplemental and Amended Petition that the defendant insurers were also insurers of Robertson.