STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 0173

--CONSOLIDATED WITH--

2019 CA 0174

MICHAEL L. THOMASSIE AND LINDA A. THOMASSIE

VERSUS

AMEDISYS LA ACQUISITIONS, LLC
D/B/A METRO PREFERRED HOME CARE, AN AMEDISYS COMPANY

JUDGMENT RENDERED: __AUG 1 8 2020__

* * * * * * *

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Livingston • State of Louisiana
Docket Number 132,087 c/w 149,881 • Division "F"

The Honorable Elizabeth P. Wolfe, Presiding Judge

* * * * * * *

<table>
<tr><td>Richard A. Cozad<br>Michael L. McAlpine<br>New Orleans, Louisiana<br><br>Kristin Hendricks<br>Chelsea, Iowa</td><td>ATTORNEYS FOR APPELLANTS<br>PLAINTIFFS—Michael L. Thomassie,<br>through his legal representative Linda A.<br>Thomassie, and Linda A. Thomassie</td></tr>
<tr><td>William C. Rowe, Jr.<br>Joseph S. Manning<br>Baton Rouge, Louisiana</td><td>ATTORNEYS FOR APPELLEE<br>INTERVENOR—Louisiana Patient's<br>Compensation Fund and the Louisiana<br>Patient's Compensation Fund Oversight<br>Board, through nominal defendant,<br>Amedisys LA Acquisitions, L.L.C., d/b/a<br>Metro Preferred Home Care, an<br>Amedisys Company</td></tr>
</table>

* * * * * * *

BEFORE: MCDONALD, MCCLENDON, WELCH, HOLDRIDGE, AND CHUTZ, JJ.

**WELCH, J.**

In this medical malpractice action, the plaintiffs, Michael L. Thomassie and Linda A. Thomassie, appeal the trial court's judgment sustaining a peremptory exception raising the objections of prescription, no right of action, and no cause of action filed by the intervenor, the Louisiana Patient's Compensation Fund and the Louisiana Patient's Compensation Fund Oversight Board (collectively, "PCF"), which resulted in the dismissal of the plaintiffs' case. The plaintiffs also appeal the trial court's judgment denying their motion for partial summary judgment on the issue of whether payments of Mr. Thomassie's medical expenses made through TRICARE, the government-provided insurance plan of the Military Health Care System, were a collateral source. For the reasons below, we reverse in part, affirm in part, and affirm.

## FACTUAL AND PROCEDURAL HISTORY

On January 20, 2010, Mr. Thomassie, who was then a 62-year-old disabled Navy veteran, fell at his home and suffered a spiral fracture of his left fibula (*i.e.*, calf or leg bone).[1] After treatment in the emergency room, he was put in a soft cast, discharged, and orders were placed for Amedisys LA Acquisitions, L.L.C. d/b/a Metro Preferred Home Care, an Amedisys Company ("Amedisys"), to provide skilled home nursing care and physical therapy to Mr. Thomassie, as he was wheelchair and bedbound. During this time, Mr. Thomassie developed multiple pressure wounds that were not properly addressed by the Amedisys home

---

[1] Prior to this injury, Mr. Thomassie suffered from a number of pre-existing conditions including diabetes, hypertension, hyperlipidemia, depression, benign prostatic hypertrophy, obesity, osteoarthritis, chronic shoulder pain, psoriasis, incontinence of bowel and bladder, a fractured fibula, and work-related cervical and thoracic spine injuries. To recap: while still on active duty with the Navy, Mr. Thomassie suffered spinal fractures when part of an aircraft fell on him in 1992. He developed decreased mobility and was confined to a wheelchair. In 2008, Mr. Thomassie was diagnosed with prostate cancer and underwent a transurethral resection of the prostate and placement of an artificial sphincter that remained open. Following his prostate removal, he was incontinent of bladder and bowel. In 2009, he was diagnosed with post-traumatic syringomyelia (the development of a fluid-filled cyst (syrinx) within the spinal cord), caused by his 1992 accident, and recommended for surgery to stabilize his spine and drain the cyst. In addition to his back surgery, Mr. Thomassie was scheduled for a lap band placement surgery, prior to this 2010 injury.

health nurses, including a large ulcer on Mr. Thomassie's coccyx. On February 17, 2010, Mr. Thomassie was admitted to the hospital and diagnosed with a large sacral decubitus ulcer, *i.e.*, a bed/pressure sore on the tailbone, and sepsis. Mr. Thomassie required emergency surgery to debride the ulcer, which postponed his other previously scheduled surgeries.

The Thomassies filed suit against Amedisys on February 16, 2011, seeking damages for Amedisys' alleged negligence in failing to provide adequate care and supervision to Mr. Thomassie, which resulted in his injuries.[2] Pursuant to a consent judgment, the trial court dismissed that suit on June 17, 2011, without prejudice, as premature pending the outcome of a properly convened medical review panel ("MRP").[3]

Also on February 16, 2011, the Thomassies filed a medical malpractice complaint. A MRP convened on August 27, 2015, and concluded that Amedisys failed to comply with the appropriate standard of care as charged in the Thomassies' medical malpractice complaint and that its conduct was a factor of Mr. Thomassie's resultant damages.

On September 17, 2015, the Thomassies filed a petition for damages against Amedisys, based on the opinion of the MRP.[4] As a result of the alleged negligence of Amedisys, the Thomassies sought all past and future medical costs and expenses and general and special damages. Mrs. Thomassie also made a claim for the loss of services and society of her husband. The Thomassies later filed a supplemental

---

[2] That suit, bearing docket number 132,087, was filed in Div. "F" of the Twenty-First Judicial District Court ("21st JDC").

[3] "All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a [MRP] established as hereinafter provided for in this Section." La. R.S. 40:1231.8(A)(1)(a). "No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a [MRP] established pursuant to this Section." La. R.S. 40:1231.8(B)(1)(a)(i).

[4] That suit, bearing docket number 149,881, was also filed in Div. "F" of the 21st JDC. On October 31, 2018, the trial court consolidated the Thomassies' cases, docket numbers 132,087 and 149,881.

and amending petition for damages on September 19, 2016, adding the PCF as a defendant and alleging that Mrs. Thomassie was entitled to damages for the costs of her attendant care to Mr. Thomassie.[5]

The Thomassies and Amedisys ultimately settled. Following a hearing on the Thomassies' petition for court approval of the agreed settlement of the Thomassies' medical malpractice claim, the trial court signed a judgment on August 4, 2016, approving a settlement between Amedisys and the Thomassies in the amount of $100,000.00, the Louisiana Medical Malpractice Act's ("MMA") liability damages cap for a single qualified health care provider. That judgment authorized the Thomassies to execute a receipt and release in favor of Amedisys and further provided that the Thomassies reserved their rights against the PCF for further damages (up to $400,000.00 remaining under the MMA cap). See La. R.S. 40:1231.4(B) and (C).[6] The judgment also named Amedisys as a nominal defendant only to the extent necessary for the Thomassies to recover excess damages against the PCF.[7]

The PCF filed a motion for intervention and answer to the Thomassies' petition for court approval of settlement on August 23, 2016. The PCF specifically objected to any payment of additional money over the amount of the settlement

---

[5] Following his death April 6, 2017, the trial court ordered that Mrs. Thomassie be substituted for Mr. Thomassie as his legal representative. See La. C.C.P. arts. 801-807.

[6] Louisiana Revised Statutes 40:1299.44(B) and (C) was redesignated as La. R.S. 40:1231.4(B) and (C) by House Concurrent Resolution No. 84 of the 2015 Regular Session (eff. June 2, 2015), which authorized and directed the Louisiana State Law Institute to reorganize and recodify the "Miscellaneous Health Provisions" Chapter of Title 40 of the Louisiana Revised Statutes of 1950 and further provided that the Louisiana State Law Institute shall change any references to Sections, Chapters, Subchapters, Parts, and Subparts in the Titles of the Louisiana Revised Statutes of 1950 and the Codes as necessary to reflect the new Sections, Chapters, Subchapters, Parts, and Subparts resulting from 2015 H.C.R. No. 84.

Accordingly, La. R.S. 40:1231.1-1231.10 was redesignated from La. R.S. 40:1299.41-1299.49. We refer herein to the law's current designation and note that no substantive changes have been made to former La. R.S. 40:1299.41-1299.49 since 2012 La. Acts, No. 802, §1. See **In re Tillman**, 2015-1114 (La. 3/15/16), 187 So. 3d 445, 446 n.1.

[7] The trial court dismissed Amedisys from the suit (to remain only as a nominal defendant) on December 19, 2016.

4

between the Thomassies and Amedisys without the benefit of an adequate opportunity to conduct discovery, identify and retain expert witnesses, prepare a defense, and conduct a trial by jury in accordance with La. R.S. 40:1231.4(C)(5)(a).

The Thomassies answered the PCF's intervention, averring that their settlement with Amedisys for $100,000.00 conclusively established liability on the part of Amedisys and that they have the right to pursue damages in excess of $100,000.00 against the PCF without the need to prove liability on the part of Amedisys. If, following a jury trial, a jury finds that the negligence of Amedisys caused damages to the plaintiffs in excess of $100,000.00, the Thomassies argued that it would be the responsibility of the PCF to cover those damages.

On January 20, 2017, the Thomassies moved for partial summary judgment, seeking judgment in their favor that the collateral source rule precluded the admission of evidence of payments of Mr. Thomassie's medical expenses that were made through TRICARE, the government-provided insurance plan of the Military Health Care System. The Thomassies argued that the sum of $504,708.96 paid by TRICARE for Mr. Thomassie's medical expenses are subject to the collateral source rule and may not be deducted from the medical expense award. The plaintiffs claimed entitlement to damages in the amount of $992,999.59, the total of Mr. Thomassie's medical expenses incurred as a result of his injuries suffered due to the malpractice of Amedisys.

The PCF opposed the Thomassies' motion for partial summary judgment. Following a hearing, the trial court denied the Thomassies' motion and signed a judgment in accordance therewith on April 24, 2017. On June 5, 2017, the Thomassies filed a supervisory writ application seeking review of the trial court's denial of their motion for partial summary judgment. This court denied the writ application, finding that the criteria set forth in **Herlitz Const. Co. v. Hotel Inv'rs**

5

**of New Iberia, Inc.**, 396 So. 2d 878 (La. 1981) was not met. <u>See</u> **Thomassie v. Amedisys La Acquisitions, LLC**, 2017-0764 (La. App. 1st Cir. 10/2/17), 2017 WL 4350908 (unpublished writ action).

Prior to the scheduled trial, the PCF asserted a peremptory exception raising the objections of prescription, no right of action, and no cause of action. The PCF argued that the lawsuit was prescribed because the Thomassies failed to file their petition within the one and three-year prescriptive periods set forth for actions for medical malpractice. <u>See</u> La. R.S. 9:5628. The PCF contended that the complained of malpractice, as alleged in the Thomassies' petition, occurred from January 23, 2010 through February 10, 2010,[8] or alternatively, at the latest on February 17, 2010, when Mr. Thomassie was admitted to the emergency room. Because the Thomassies did not file their lawsuit until September 17, 2015, the PCF argued their claims were facially prescribed. The PCF also alleged that the Thomassies' request for a MRP was not timely, and that Mrs. Thomassie's claims for attendant care costs were also prescribed. The PCF further contended that Mrs. Thomassie had no right of action to proceed against the PCF in an independent capacity because she was never a "claimant" as defined by the MMA. The PCF also averred that Mrs. Thomassie had no independent cause of action to collect damages from the PCF for the costs of her attendant care of her husband, as alleged in the Thomassies' supplemental and amending petition for damages, arguing that her claim does not relate back under the MMA.

The Thomassies opposed the PCF's exceptions. Following a hearing, the trial court sustained the PCF's peremptory exception and signed a judgment in

---

[8] The Thomassies' petition is silent as to the date(s) of the alleged malpractice, but the petition incorporates, through the MRP opinion (which is attached as an exhibit to the petition), the dates of the alleged malpractice: January 23, 2010 through February 10, 2010. <u>See</u> La. C.C.P. art. 853 ("A copy of any written instrument that is an exhibit to a pleading is a part thereof."). Alternatively, the PCF averred that the Thomassies had to file their petition within one year of February 17, 2010, when Mr. Thomassie was admitted to the emergency room and "knew or should have known" of the malpractice.

accordance therewith on September 13, 2018. The trial court specifically found that the Thomassies' petition for damages alleging a breach of the standard of care ending on February 10, 2010, and the claims of Mr. Thomassie and his surviving spouse were prescribed because the request for the MRP was submitted on or after February 16, 2011. The trial court also found that Mrs. Thomassie's claims for attendant care costs were prescribed because they were not pled until September 16, 2016, and the petition did not relate back to the filing of the original malpractice action. The trial court further found that Mrs. Thomassie had no right or cause of action to pursue an independent claim for attendant care costs because she was not a patient under the MMA, nor did she submit her claims to the MRP.

The Thomassies now appeal the September 13, 2018 final judgment sustaining the PCF's peremptory exception, as well as the April 24, 2017 interlocutory judgment denying their motion for partial summary judgment on the collateral source issue.[9]

## LAW AND DISCUSSION

### Assignment of Error No. 2: The PCF's Peremptory Exception

For ease of discussion, we begin with the Thomassies' second assignment of error. The Thomassies argue that the trial court erred in sustaining the PCF's peremptory exception raising the objections of prescription, no right of action, and no cause of action.

#### Prescription

The PCF filed an objection of prescription as to the "entire lawsuit." The PCF contends that the Thomassies filed this lawsuit after the applicable

---

[9] When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory or partial judgments prejudicial to it or that involve the same or related issues, in addition to the review of the final judgment dismissing all of its claims with prejudice. **Bannister Properties, Inc. v. State**, 2018-0030 (La. App. 1st Cir. 11/2/18), 265 So. 3d 778, 784 n.9, writ denied, 2019-0025 (La. 3/6/19), 266 So. 3d 902 n.6.

prescriptive date and therefore can have no recovery against the PCF.[10] The Thomassies argue in opposition that the PCF has no standing to raise the prescription objection because the settlement of Mr. Thomassie's malpractice claim with Amedisys mooted any prescriptive defenses. The PCF counters by alleging that a 2003 amendment to La. R.S. 40:1231.4(C)(5)(a) granted the PCF substantive rights to conduct discovery, identify and retain expert witnesses, and prepare a defense in advance of a trial to determine whether the PCF may be liable for damages in excess of the $100,000.00 settlement. The PCF argues that the "prepare a defense" language added by the 2003 amendment to La. R.S. 40:1231.4(C)(5)(a) necessarily includes the right to raise a defense, including the defense of prescription. Accordingly, the PCF argues that it may raise exceptions, including the objection of prescription. See 2003 La. Acts, No. 882, § 1 (eff. July 1, 2003). Thus, the issue before us is whether the PCF may raise an objection of prescription as a bar to payment of damages in excess of $100,000.00 where the health care provider and the claimant settled for $100,000.00, resulting in the statutory admission of liability as to the health care provider. We are called upon to interpret the law at issue. Questions of law are reviewed *de novo*, without any deference to the legal conclusions reached by the trial court. **Smith v. Robinson**, 2018-0728 (La. 12/5/18), 265 So. 3d 740, 744.

The MMA limits the liability of a single qualified health care provider to $100,000.00, plus interest for all malpractice claims for injuries to or death of a patient. La. R.S. 40:1231.2(B)(2). Any damages awarded or agreed to in excess of $100,000.00 may be recovered from the PCF; however, the total amount recoverable, exclusive of future medical care and related benefits, shall not exceed $500,000.00, plus interest and cost. See La. R.S. 40:1231.2(B)(1) and (3). A

_____

[10] A medical malpractice action must be filed within one year from the date of the alleged act, omission, or neglect, or within one year of the date of discovery, but in all instances such claims shall at the latest be filed within a period of three years from the date of the alleged act, omission or neglect. La. R.S. 9:5628.

8

settlement for $100,000.00 results in a statutory admission of liability as to the health care provider. See La. R.S. 40:1231.4(C)(5)(e). Once the PCF statutorily intervenes, the case proceeds to trial pursuant to the provisions of La. R.S. 40:1231.4(C). Louisiana Revised Statutes 40:1231.4(C)(5)(a) provides that a trial shall take place to determine the amount of damages for which the PCF may be liable in excess of the $100,000.00 already paid by the health care provider or its insurer. This trial shall take place after the PCF has "been given an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense...." La. R.S. 40:1231.4(C)(5)(a).

The Supreme Court has previously ruled on what effect the MMA's statutory admission of liability provision, La R.S. 40:1231.4(C)(5)(e) (formerly La. R.S. 40:1299.44(C)(5)), has on the PCF's ability to defend against its liability for damages in excess of $100,000.00. In **Graham v. Willis-Knighton Med. Ctr.**, 97-0188 (La. 9/9/97), 699 So. 2d 365, the Supreme Court held that a health care provider's admission of liability only relieves a claimant of the burden of proving liability of the first $100,000.00 in damages, which the health care provider has admitted to and agreed to pay via the settlement. To recover excess damages from the PCF, the Supreme Court held that a claimant has the burden of proof to show liability of any damages greater than $100,000.00. **Graham**, 699 So. 2d at 372.

In **Khammash v. Clark**, 2013-1564 (La. 5/7/14), 145 So. 3d 246, the Supreme Court later extended its approach adopted in **Graham** to apply to summary judgments as well as $100,000.00 settlements, and further, allowed the PCF to challenge the liability of *all* damages, even when liability up to $100,000.00 has been statutorily admitted by the health care provider via the settlement. In **Khammash**, the claimant filed a petition for damages alleging medical malpractice for failing to properly diagnose and treat a spinal injury. The claimant later amended his petition based on the opinion of the MRP, which found

9

that one of the claimant's health care providers had deviated from the appropriate standard of care. **Khammash**, 145 So. 3d at 251. The claimant and the health care provider ultimately settled for $100,000.00. The trial court also granted a motion for partial summary judgment filed by the claimant, finding that the health care provider's fault caused his injuries.[11] **Khammash**, 145 So. 3d at 251-252.

The matter proceeded to trial for excess damages claimed against the PCF. The jury returned a verdict finding no breach in the standard of care by the health care provider that caused damages to the claimant. Accordingly, the trial court dismissed the claimant's suit, with prejudice. **Khammash**, 145 So. 3d at 252. The claimant appealed to this court, which reversed, finding that the trial court erred in allowing fault and causation to go before the jury. This court remanded for a trial limited to the quantum of damages.[12] **Khammash**, 145 So. 3d at 253. Both the claimant and the PCF appealed to the Supreme Court, questioning whether the PCF was bound by the partial summary judgment finding that the health care provider caused the injuries to the claimant. **Khammash**, 145 So. 3d at 253.

In ruling, the Supreme Court emphasized its holding in **Graham**—that the settlement established the health care provider's fault and causation of damages of at least $100,000.00, but that the claimant still bore the burden of proving at trial that the malpractice caused damages in excess of $100,000.00. **Khammash**, 145 So. 3d at 255. The Supreme Court concluded that since the health care provider's admission of liability by settlement can only establish fault and causation up to $100,000.00, a summary judgment as to the health care provider's fault and causation, prior to the PCF's intervention in the case, can only establish liability up

---

[11] The claimant was likely trying to meet his burden of proof that the malpractice caused damages in excess of $100,000.00 (required under **Graham**) prior to trial by seeking partial summary judgment against the health care provider, in addition to the admission of liability obtained through the settlement.

[12] See **Khammash v. Clark**, 2012-0763 (La. App. 1st Cir. 5/17/13), 2013 WL 2150711, at *1, *6, *8, writs granted, 2013-1564, 2013-1736 (La. 11/15/13), 125 So. 3d 1096, rev'd, 2013-1564 (La. 5/7/14), 145 So. 3d 246.

to $100,000.00. **Khammash**, 145 So. 3d at 256. The Supreme Court reasoned that if a summary judgment could establish damages over $100,000.00, the claimant and the health care provider would be able to stipulate the PCF's liability before the PCF was statutorily capable of being involved in the claim. **Khammash**, 145 So. 3d at 253, 256. The Supreme Court then affirmed the jury's verdict, finding that the evidence supported a finding that the health care provider's fault did not cause the claimant's damages. **Khammash**, 145 So. 3d at 253, 260. Thus, the **Khammash** ruling extended the **Graham** holding to apply to summary judgments (in addition to $100,000.00 settlements) and further held that the PCF may argue at trial that the health care provider's malpractice caused no damages at all, even when liability up to $100,000.00 has been statutorily admitted. **Khammash**, 145 So. 3d at 253, 256, 258-260. While **Graham** gave the PCF the ability to dispute causation of damages in excess of $100,000.00, **Khammash** allows the PCF to argue that the claimant's damages were caused by another source, or that there were no damages at all. **Khammash**, 145 So. 3d at 260.

Despite the assertions of the PCF and its reliance on **Khammash**, the Supreme Court did not and has not addressed whether the statutory admission of liability by a health care provider through a $100,000.00 settlement precludes the PCF from raising an objection of prescription as to the claimant's underlying malpractice action. Nor has the Supreme Court addressed whether the provisions of La. R.S. 40:1231.4(C)(5)(a) that were added in 2003—allowing the PCF to "prepare a defense" prior to trial—gives the PCF a substantive right to assert an objection of prescription as to the claimant's underlying malpractice action.

The Supreme Court has made it clear that when a malpractice victim settles with a health care provider or the health care provider's insurer for $100,000.00, that settlement triggers the PCF's status as an intervenor under La. R.S. 40:1231.2(B)(3). **Khammash**, 145 So. 3d at 254. The MMA neither contemplates

11

the PCF as a party defendant, nor gives the PCF status as a co-obligor or insurer of the health care provider. Rather, the PCF is a statutory intervenor "who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of one hundred thousand dollars are payable by the Fund." **Khammash**, 145 So. 3d at 254.

Other circuits have directly addressed the issue before this court. The Fourth Circuit has consistently held that once the health care provider and the claimant agree on a settlement of $100,000.00, the PCF may not raise prescription as a bar to further payment by the PCF. See **Reed v. St. Charles Gen. Hosp.**, 2008-0430 (La. App. 4th Cir. 5/6/09), 11 So. 3d 1138, 1149, writ denied, 2009-1252 (La. 9/18/09), 17 So. 3d 979. The Third and Fifth Circuits have held that not only is the PCF precluded from raising an objection of prescription, the PCF may not raise *any* exceptions in a medical malpractice suit after the health care provider's limitation of liability is satisfied via a $100,000.00 settlement. See **Romero v. Elias**, 2007-806 (La. App. 3d Cir. 12/19/07), 972 So. 2d 450, 454, writ denied, 2008-0171 (La. 3/24/08), 977 So. 2d 954, and **McGrath v. Excel Home Care, Inc.**, 2001-1270 (La. App. 5th Cir. 3/26/02), 810 So. 2d 1283, 1288, writ denied, 2002-1344 (La. 11/27/02), 831 So. 2d 284. The basis for those circuits' rejection of the PCF's right to urge an objection of prescription as to the underlying malpractice action is that once a $100,000.00 settlement is paid by the health care provider to the claimant, the statutes and jurisprudence make clear that such a payment is an admission of liability by the health care provider, and the PCF does not stand in the shoes of the health care provider. To allow the PCF to raise an objection of prescription as to the claimant's underlying malpractice action after the payment of the $100,000.00 settlement would be to permit it to raise a defense only available to a defendant, which the PCF is not. See **Reed**, 11 So. 3d at 1149, **Romero**, 972 So. 2d at 454, and **McGrath**, 810 So. 2d at 1288.

12

The PCF argues that this court has held in two instances that the PCF has a right to raise exceptions after the $100,000.00 settlement between a claimant and health care provider. In first case, **St. Romain v. Luker**, 2000-1366 (La. App. 1st Cir. 11/9/01), 804 So. 2d 85, 87, writ denied, 2002-0336 (La. 4/19/02), 813 So. 2d 1083, the claimant settled with the health care provider for $50,000.00. The **St. Romain** court held that a settlement of less than the full $100,000.00 provided for in La. R.S. 40:1231.2(B)(2) (formerly La. R.S. 40:1299.42(B)(3)) was insufficient to trigger the PCF's statutory liability for excess damages, and therefore, insufficient to preclude the PCF from contesting the health care provider's liability, including the right to assert an exception raising the objection of prescription. **St. Romain**, 804 So. 2d at 88. The **St. Romain** decision is clearly distinguishable from the instant suit. In that case, the settlement between the claimant and the health care provider was less than the full $100,000.00. In our case, Mr. Thomassie and his health care provider, Amedisys, settled for the full $100,000.00. Therefore, Amedisys' liability *is* admitted, and under the implied language of **St. Romain**, the PCF is precluded from contesting Amedisys' liability, including a prohibition on asserting an objection of prescription.

In the second medical malpractice case cited by the PCF from this court, **LeCompte v. Cont'l Cas. Co.**, 2016-1359 (La. App. 1st Cir. 7/12/17), 224 So. 3d 1005, 1008, writ denied, 2017-1525 (La. 12/15/17), 231 So. 3d 635, the claimant sought recovery against his health care provider and its insurer. The claimant's employer and its workers' compensation carrier then intervened in the suit ("intervenors"), seeking reimbursement for the payment of workers' compensation benefits. The claimant ultimately dismissed his claims against the health care provider.[13] After that dismissal, the intervenors filed an amended petition and

---

[13] It is not clear from the case why the claimant dismissed his claims against the health care provider.

13

claimed subrogation to the right of the claimant to recover from the health care provider. The intervenors settled their claims with the health care provider for $100,000.00 and thereafter sought the recovery of excess damages from the PCF. **LeCompte**, 224 So. 3d at 1008. The PCF filed objections of no right of action and no cause of action, as well as a motion for summary judgment in the alternative. **LeCompte**, 224 So. 3d at 1008-09. The trial court sustained the no right of action objection, holding that under the MMA only "natural persons" have a right to pursue excess damages from the PCF, and since the intervenors—the claimant's employer and its compensation carrier—were "juridical persons," they had no right of action under the MMA. **LeCompte**, 224 So. 3d at 1010-1011. In affirming the trial court, the **LeCompte** court stated:

> Louisiana Revised Statutes [40:1231.4(C)(5)] makes it clear that when a malpractice claimant settles with a qualified health care provider or his insurer for $100,000.00, that settlement triggers the PCF's liability for excess damages under La. R.S. [40:1231.2(B)(3)]. The settlement in the instant case constituted a statutory admission of liability on the part of [the health care provider], one that the PCF was precluded from contesting. However, the PCF is not attempting to contest the liability of the health care provider, but rather the right of the intervenors to seek excess damages from the PCF. We can find no jurisprudence that disallows the PCF from raising exceptions regarding anything other than the liability of the health care provider. We therefore find that the PCF has standing to raise the exception of no right of action in the instant case. [Citation omitted.]

**LeCompte**, 224 So. 3d at 1011.

**LeCompte** is clearly distinguishable from the instant suit. That case involved an objection of no right of action, not an objection of prescription as to the claimant's underlying malpractice action. Furthermore, in **LeCompte**, the PCF challenged the intervenors' right (not the claimant's right) to seek excess damages from the PCF. The PCF did not contest the health care provider's liability or the claimant's underlying cause of action, only the intervenors' right of action to seek

14

excess damages from the PCF. In the instant case, however, the PCF filed its prescription objection as to the "entire lawsuit." Its prescription objection *is* directed to the claimants' (the Thomassies') underlying cause of action, which includes the liability of Amedisys, the health care provider. Accordingly, the holding of **LeCompte**—that the PCF may raise "exceptions regarding anything other than the liability of the health care provider"—if applied to the instant case, would prohibit the PCF from raising an objection of prescription.

Based on the foregoing jurisprudence, we recognize that the $100,000.00 settlement in the instant case established Amedisys' liability of damages of at least $100,000.00, but that Mr. Thomassie bears the burden of proving at trial that the malpractice caused damages in excess of $100,000.00. Furthermore, we recognize that in accordance with La. R.S. 40:1231.4(C)(5)(a), once the PCF has "been given an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense...", the PCF may argue at trial that Amedisys' malpractice caused no damages at all, even when liability up to $100,000.00 has been statutorily admitted by Amedisys. See **Khammash**, 145 So. 3d at 253, 256, 258-260. However, there is no statute or jurisprudence that allows the PCF to raise an objection of prescription as to the claimants' underlying malpractice action. We agree with the reasoning of the Third, Fourth, and Fifth Circuits that to allow the PCF to raise an objection of prescription as to Mr. Thomassie's underlying malpractice action after the payment of the $100,000.00 settlement by Amedisys would be to permit the PCF to raise a defense only available to a defendant, which the PCF is not. See **Reed**, 11 So. 3d at 1149, **Romero**, 972 So. 2d at 454, and **McGrath**, 810 So. 2d at 1288.

Furthermore, the 2003 amendment to the MMA did not expand the availability of, nor grant any specific "defenses" to the PCF. Section 2 of 2003 La. Acts, No. 882, provides that "[t]he provision of this Act enacting R.S.

15

40:1299.44(C)(5)(a) and (e) [currently designated as La. R.S. 40:1231.4(C)(5)(a) and (e)] are procedural and interpretative in nature and are intended to clarify and codify existing law." See **Khammash**, 145 So. 3d at 255, n.6. Therefore, contrary to the PCF's assertions, the 2003 MMA amendment did not grant any new substantive rights to the PCF, such as the right raise an objection of prescription as to a claimant's malpractice action once a health care provider has statutorily admitted to liability via a $100,000.00 settlement. See 2003 La. Acts, No. 882, §2.

Therefore, we reverse the portion of the trial court's September 13, 2018 judgment sustaining the PCF's peremptory exception raising the objection of prescription.

### *No Cause of Action*

The PCF argues that Mrs. Thomassie does not have a cause of action for an independent claim for attendant care costs she provided to her husband under the MMA. The PCF argues that Mrs. Thomassie cannot collect these damages through the survival action of her husband because she did not charge Mr. Thomassie for her attendant care, nor did Mr. Thomassie pay her for her attendant care. The PCF further avers that the first time this claim was raised was in the supplemental and amending petition filed on September 15, 2016, and that there is no relation back in the context of medical malpractice actions; thus, the pleading does not relate back to the original petition. The PCF asserts that any independent claim Mrs. Thomassie may have had to recover for the cost of providing her husband with attendant care has prescribed.

In opposition, the Thomassies argue that the MMA allows a claimant to recover the costs of custodial/attendant care services. In this instance, the Thomassies aver that as the legal representative of her late husband's estate, Mrs. Thomassie is a claimant under the MMA and has stated a cause of action for damages for custodial/attendant care services on behalf of her husband.

The function of the peremptory exception raising the objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. **Everything on Wheels Subaru, Inc. v. Subaru South, Inc.,** 616 So. 2d 1234, 1235 (La. 1993); **Copeland v. Treasure Chest Casino, L.L.C.,** 2001-1122 (La. App. 1st Cir. 6/21/02), 822 So. 2d 68, 70. Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action. **Montalvo v. Sondes,** 93-2813 (La. 5/23/94), 637 So. 2d 127, 131. All facts pled in the petition must be accepted as true. **Rebardi v. Crewboats, Inc.,** 2004-0641 (La. App. 1st Cir. 2/11/05), 906 So. 2d 455, 457.

The exception is triable on the face of the pleading, and no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931; **Richardson v. Richardson,** 2002-2415 (La. App. 1st Cir. 7/9/03), 859 So. 2d 81, 86. Thus, the only issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Perere v. Louisiana Television Broadcasting Corp.,** 97-2873 (La. App. 1st Cir. 11/6/98), 721 So. 2d 1075, 1077.

The burden of demonstrating that a petition fails to state a cause of action is upon the mover. **Ramey v. DeCaire,** 2003-1299 (La. 3/19/04), 869 So. 2d 114, 119. In reviewing a trial court's ruling sustaining an exception raising the objection of no cause of action, the appellate court conducts a *de novo* review because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. **Fink v. Bryant,** 2001-0987 (La. 11/28/01), 801 So. 2d 346, 349; **B & C Elec., Inc. v. East Baton Rouge Parish School Board,** 2002-1578 (La. 5/9/03), 849 So. 2d 616, 619.

Louisiana Revised Statutes 40:1231.3(B) provides, in pertinent part:

(1) "Future medical care and related benefits" for the purpose of this Section means all of the following:

(b) All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provisions of such services, after the date of the injury that will be incurred after the date of the settlement, judgment, or arbitration award.

The provisions of the Louisiana Administrative Code governing the PCF also provide that "future medical care and related benefits" includes "all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services...." LAC 37:III.1903. The Supreme Court has clarified that "future medical care and related benefits" encompasses all past, present, and future medical and related care services necessitated by a qualified health care provider's negligence, not just what is usually thought of as "future" medical needs. This includes already incurred custodial/attendant care services. See **Hall v. Brookshire Bros., Ltd.**, 2002-2404 (La. 6/27/03), 848 So. 2d 559, 576 n.9.

In the Thomassies' original petition for damages filed against Amedisys on February 16, 2011, the Thomassies alleged the following:

Mr. Thomassie has required constant medical care and attention as a result of the injuries sustained and continues to require medical care as a result of these injuries almost one year later.

\*\*\*

By reasons of the above-described circumstances, petitioners, MICHAEL L. THOMASSIE and LINDA A. THOMASSIE, are entitled to recover such general and special damages as are reasonable in the premises.

Following the death of Mr. Thomassie, the trial court named Mrs. Thomassie as the legal representative of Mr. Thomassie's estate. See La. C.C.P. arts. 801-807. Louisiana Revised Statutes 40:1231.1 contains the following definitions for terms used in the MMA, in pertinent part:

18

(4) "Claimant" means a patient or representative or any person, including a decedent's estate, seeking or who has sought recovery of damages or future medical care and related benefits under this Part....

\*\*\*

(18) "Representative" means the spouse, parent, guardian, trustee, attorney or other legal agent of the patient.

Accordingly, Mrs. Thomassie is a "claimant" under the MMA as the legal representative of Mr. Thomassie's estate.

Based on the facts alleged in the petition, Mrs. Thomassie—now the "claimant" under the MMA as the legal representative of Mr. Thomassie's estate—has stated a cause of action against the PCF for "future medical care and related benefits," including previously incurred custodial/attendant care services. Therefore, we reverse the portion of the trial court's September 13, 2018 judgment sustaining the PCF's peremptory exception raising the objection of no cause of action as to the claims for attendant care services asserted by Mrs. Thomassie in her capacity as the legal representative of Mr. Thomassie's estate, on behalf of Mr. Thomassie's estate.

However, as to Mrs. Thomassie's independent claim against the PCF for damages in her individual capacity for attendant care services she rendered for Mr. Thomassie, we find that the trial court correctly sustained the objection of no cause of action. Under La. R.S. 40:1231.1(4), Mrs. Thomassie is not a "claimant" under the MMA in her individual capacity because she is not a "patient" as defined in La. R.S. 40:1231.1(15): "'Patient' means a natural person, including a donor of human blood or blood components and a nursing home resident who receives or should have received health care from a licensed health care provider, under contract, expressed or implied." Mrs. Thomassie did not receive health care from Amedisys. Any damages Mrs. Thomassie may have sustained clearly resulted

19

from the health care extended to Mr. Thomassie by Amedisys and was not the result of direct health care afforded to her. See **Reed v. St. Charles Gen. Hosp.**, 2008-0430 (La. App. 4th Cir. 5/6/09), 11 So. 3d 1138, 1144, writ denied, 2009-1252 (La. 9/18/09), 17 So. 3d 979. Accordingly, Mrs. Thomassie's independent claim for damages in her individual capacity for attendant care services rendered to Mr. Thomassie does not fall under the MMA. The trial court properly sustained the objection of no cause of action as to Mrs. Thomassie's independent claim.

*No Right of Action*

The PCF argues that Mrs. Thomassie has no right of action to proceed against the PCF in an independent capacity because she has not submitted her claim for the costs of attendant care of her husband to a MRP and is therefore not a "claimant" under the MMA. In opposition, the Thomassies contend that as the legal representative of Mr. Thomassie, Mrs. Thomassie is defined as a "claimant" under the MMA and has a right to seek recovery of damages for custodial/attendant care services as the legal representative of Mr. Thomassie's estate. The Thomassies argue that it is the estate of Mr. Thomassie, through his widow, that is seeking the value of her custodial/attendant care services.

An exception of no right of action is a peremptory exception designed to test whether a plaintiff has any interest in judicially enforcing the right asserted. See La. C.C.P. art. 927(A)(6). Unless otherwise provided by law, an action can only be brought by a person having a real and actual interest in the matter asserted. La. C.C.P. art. 681. The function of the exception is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted, *i.e.*, whether this plaintiff, as a matter of law, has an interest in the claim sued on. **OXY USA Inc. v. Quintana Prod. Co.**, 2011-0047 (La. App. 1st Cir. 10/19/11), 79 So. 3d 366, 376, writ denied, 2012-0024 (La. 3/2/12), 84 So. 3d 536. The exception does not raise the question of the plaintiff's ability to prevail on the

20

merits, nor the question of whether the defendant may have a valid defense. **Duplessis Cadillac, Inc. v. Creative Credit Servs., Inc.**, 597 So. 2d 1155, 1158 (La. App. 1st Cir. 1992). This peremptory exception is a threshold device to terminate a suit brought by one who has no interest in judicially enforcing the right asserted. **Jenkins v. City of Baton Rouge**, 2014-1235 (La. App. 1st Cir. 3/9/15), 166 So. 3d 1032, 1035.

The party raising a peremptory exception bears the burden of proof. To prevail on an exception of no right of action, the defendant must show the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. **Falcon v. Town of Berwick**, 2003-1861 (La. App. 1st Cir. 6/25/04), 885 So. 2d 1222, 1224. Evidence supporting or controverting an objection of no right of action is admissible. La. C.C.P. art. 931; **OXY USA Inc.**, 79 So. 3d at 377; **Falcon**, 885 So. 2d at 1224. Whether a plaintiff has a right of action is ultimately a question of law; therefore, it is reviewed *de novo* on appeal. **Garrison v. James Const. Grp., LLC**, 2014-0761 (La. App. 1st Cir. 5/6/15), 174 So. 3d 15, 21 (en banc), writ denied, 2015-1112 (La. 9/18/15), 178 So. 3d 146.

As discussed above, an MMA claimant may claim entitlement to "future medical care and related benefits," which encompasses all past, present, and future medical and related care services necessitated by a qualified health care provider's negligence, including already incurred custodial/attendant care services. See La. R.S. 40:1231.3(B)(1)(b), LAC 37:III.1903, and **Hall**, 848 So. 2d at 576 n.9. As the legal representative of Mr. Thomassie's estate, Mrs. Thomassie is a "claimant" under the MMA. See La. R.S. 40:1231.1(4) and (18). Accordingly, Mrs. Thomassie has a right of action to pursue a claim against the PCF for "future medical care and related benefits," including already incurred custodial/attendant care services, on behalf of Mr. Thomassie's estate. Therefore, we reverse the portion of the trial court's September 13, 2018 judgment sustaining the PCF's

peremptory exception raising the objection of no right of action as to the claim for attendant care services asserted by Mrs. Thomassie in her capacity as the legal representative of Mr. Thomassie's estate.

However, as to Mrs. Thomassie's independent claim against the PCF for damages in her individual capacity for attendant care services she rendered for Mr. Thomassie, we find that the trial court correctly sustained the objection of no right of action. As discussed above, Mrs. Thomassie is not a "claimant" under the MMA in her individual capacity because she is not a "patient" as defined in La. R.S. 40:1231.1(15). Accordingly, Mrs. Thomassie has no right of action to assert an independent claim for damages for attendant care services rendered to Mr. Thomassie under the MMA. The trial court properly sustained the objection of no right of action as to Mrs. Thomassie's independent claim.

*Assignment of Error No. 1: The Thomassies' Motion for Partial Summary Judgment on the Collateral Source Issue*

In their first assignment of error, the Thomassies argue that the trial court erred in denying their motion for partial summary judgment seeking a determination that payments of Mr. Thomassie's medical expenses made through TRICARE, government-funded health care benefits, were a collateral source and that evidence of the TRICARE payments are not admissible evidence at trial. The Thomassies allege they paid annual premiums to TRICARE in order to obtain insurance coverage. The Thomassies allege that TRICARE ultimately paid $504,708.96 towards Mr. Thomassie's medical expenses and that those payments are a collateral source, and as such, may not be deducted from any damage award the Thomassies may receive from the PCF. The Thomassies argue, therefore, that they are entitled to recover against the PCF the full amount of Mr. Thomassie's medical expenses, $992,999.59, incurred in connection with his injuries suffered due to the malpractice of Amedisys.

22

*Motion for Summary Judgment*

A motion for summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. La. C.C.P. art. 966(E). The issue before us on the motion for partial summary judgment is whether the collateral source rule precludes the introduction of evidence of the $504,708.96 in payments made by TRICARE for Mr. Thomassie's medical expenses. Judgement must be rendered in the Thomassies' favor, as the movers, if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions show that there is no genuine issue as to material fact and that they are entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3) and (4). The burden of proof on a motion for summary judgment rests with the mover, here the Thomassies. La. C.C.P. art. 966(D)(1). The burden on the PCF, as the adverse party, is to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the Thomassies are not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). When reviewing summary judgments, appellate courts conduct a *de novo* review of the evidence, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Boudreaux v. Vankerkhove**, 2007-2555 (La. App. 1st Cir. 8/11/08), 993 So. 2d 725, 729-30.

*The Collateral Source Rule*

Under the collateral source rule, payments received from an independent source are not deducted from the award an injured party would otherwise receive from the tortfeasor. **Bozeman v. State**, 2003-1016 (La. 7/2/04), 879 So. 2d 692, 698. As a result, the tortfeasor is not allowed to benefit from the victim's foresight

in purchasing insurance and other benefits.[14] **Bozeman**, 879 So. 2d at 698 and **Johnson v. Neill Corp.**, 2015-0430 (La. App. 1st Cir. 12/23/15) 2015 WL 9464625, at *9 (unpublished opinion), writs denied, 2016-0137, 2016-0147 (La. 3/14/16), 189 So. 3d 1068, 1070.

To determine whether the collateral source rule applies requires an analysis of the facts of each case in light of two considerations—(1) whether applying the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his patrimony because the benefit was available, such that he is not reaping a windfall or double recovery—with an emphasis placed on the primary policy goal of tort deterrence. **Howard v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.**, 2017-1221 (La. App. 1st Cir. 2/16/18), 243 So. 3d 4, 9-10, writ denied, 2018-0435 (La. 5/11/18), 241 So. 3d 1017 (citing **Bozeman**, 879 So. 2d 692 at 705, **Bellard v. American Central Insurance Co.**, 2007-1335 (La. 4/18/08), 980 So. 2d 654, 668-669, and **Cutsinger v. Redfern**, 2008-2607 (La. 5/22/09), 12 So. 3d 945, 952, 954-955).

*Analysis*

In her affidavit filed in support of the motion for partial summary judgment, Mrs. Thomassie stated that she and her husband diminished their patrimony by paying annual premiums to TRICARE to obtain insurance coverage. Beginning in 1995, and continuing through 2013, the Thomassies alleged they paid TRICARE annual "premiums" of $495.00 to receive retirement medical benefits. When Mr. Thomassie became eligible for Medicare benefits in 2013, the Thomassies' "premium" was reduced to $247.50. The Thomassies contended that TRICARE

---

[14] Examples of collateral sources that may provide compensation for a tort victim's injuries include Medicare, Medicaid, workers' compensation, unemployment compensation, sick pay and related employee benefit programs, Social Security, pension and retirement funds, and benefits provided *gratuitously* by private parties or government agencies under compulsion of neither contract nor statute. See **Bozeman**, 879 So. 2d at 698-99; 706 (Knoll, J., concurring).

24

paid $504,708.96 towards Mr. Thomassie's medical expenses, and that their final damages award against the PCF should not be reduced by that amount.[15]

The PCF countered that TRICARE payments are not a collateral source and that the Thomassies have no entitlement to recover amounts that were not incurred. The PCF contended that TRICARE is a government-funded insurance program that does not involve a contract guaranteeing the indemnification of an insured party against a specified loss in return for a premium paid. The PCF averred that the Thomassies did not pay insurance premiums to TRICARE, arguing that the money paid by them to TRICARE were "enrollment fees." The PCF argued that it is the United States, not the Thomassies, that holds the right to seek recovery for medical expenses paid on Mr. Thomassie's behalf through TRICARE. The PCF further contended that it is not a tortfeasor and engaged in no activity that justifies application of the collateral source rule.

The Military Health System ("MHS") is the health care system of the armed services within the Department of Defense ("DOD"). The MHS is separate from the Veterans Health Administration ("VHA"),[16] which is a part of the Department of Veterans Affairs ("VA").[17] In addition to providing medical care in combat

---

[15] The Thomassies rely on **Fullilove v. U.S. Casualty Co. of N.Y.**, 129 So. 2d 816, 832 (La. App. 2d Cir. 1961), which held that VA benefits are a collateral source in support of their argument that payments made by TRICARE are a collateral source. As stated above, however, TRICARE is not a VA benefit, but a government-provided health care plan. Therefore, **Fullilove** does not apply to this matter.

[16] The VHA is a system of approximately 1,255 hospitals, outpatient clinics, counseling centers and long-term care facilities that provide care to nearly 9 million veterans annually. See **About VHA**, *Veterans Health Administration*, https://www.va.gov/health/aboutvha.asp (last accessed Aug. 26, 2019). Because VHA health facilities cannot accommodate the demand for care by all veterans, dependents of veterans who are permanently and totally disabled or who die of a service-connected disability can qualify for Civilian Health and Medical Program of the VA ("CHAMPVA"), which is a health care benefits program that largely uses private doctors and hospitals to provide care. The VHA shares the cost of certain health care services and supplies with eligible beneficiaries. See "CHAMPVA," **Community Care**, *Veterans Health Administration*, https://www.va.gov/COMMUNITYCARE/programs/dependents/champva/index.asp (last accessed Aug. 12, 2020).

[17] See **About the MHS**, *Health.mil: The Official Website of the Military Health System*, https://www.health.mil/About-MHS (last accessed Aug. 12, 2020).

situations and at bases overseas, the MHS operates 55 hospitals and over 370 clinics.[18] TRICARE is the MHS's federally-funded health care benefits program that serves active duty service members, National Guard/Reserve members, retirees, their families, survivors, and certain former spouses around the world.[19] See 10 U.S.C. §§ 1071-1104, and 32 C.F.R. §§ 199.17(a)(1) and 199.4(a). TRICARE replaced the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") in 1994.[20] As a major component of the MHS, TRICARE brings together the military hospitals and clinics worldwide with network and non-network TRICARE-authorized civilian health care professionals, institutions, pharmacies, and suppliers to provide access to a full array of health care services.[21] Like Medicare, TRICARE is government-funded insurance, but TRICARE utilizes private doctors and facilities; however, TRICARE allowable charges are tied to Medicare rates.[22] Congress has expressly stated that when a person is covered by both TRICARE and a third-party payer, and both TRICARE and the third-party payer cover the same benefit, the third-party payer has a statutory obligation to reimburse the United States the costs incurred on behalf of

[18] See "Military Treatment Facilities," ELEMENTS OF THE MHS, **About the MHS**, *Health.mil: The Official Website of the Military Health System*, https://www.health.mil/About-MHS/MHS-Elements (last accessed Aug. 12, 2020).

[19] See "Expeditionary Care," ELEMENTS OF THE MHS, **About the MHS**, *Health.mil: The Official Website of the Military Health System*, https://www.health.mil/About-MHS/MHS-Elements (last accessed Aug. 12, 2020), "Eligibility," **Plans & Eligibility**, *TRICARE*, https://www.tricare.mil/Plans/Eligibility (last accessed Aug. 12, 2020), and **U.S., ex rel. Johnson v. Kaner Med. Grp., P.A.**, 641 F. App'x 391, 392 n.1 (5th Cir. 2016) (per curiam).

[20] See "Defense Health Care: Despite TRICARE Procurement Improvements, Problems Remain," **Report to Congressional Requesters**, *United States General Accounting Office*, p. 25, https://www.gao.gov/archive/1995/he95142.pdf (last accessed Aug. 12, 2020).

[21] See "Evaluation of the TRICARE Program," **FY 2019 Report to Congress: Access, Cost, and Quality Data through FY 2018**, *22nd Annual TRICARE Evaluation Report and Data*, p. 12, downloadable at https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/Health-Care-Program-Evaluation/Annual-Evaluation-of-the-TRICARE-Program (last accessed Aug. 12, 2020).

[22] See "TRICARE Allowable Charges," BUSINESS SUPPORT: RATES AND REIMBURSEMENT, **Military Health Topics**, *Health.mil: The Official Website of the Military Health System* https://www.health.mil/Military-Health-Topics/Business-Support/Rates-and-Reimbursement/TRICARE-Allowable-Charges (last accessed Aug. 12, 2020).

TRICARE beneficiaries who are also covered by the third-party payer.[23]  10 U.S.C § 1095b(b), and 32 C.F.R. § 199.12(b)(1).

An analysis of the two policy considerations of the collateral source rule applied to the particular facts of the instant case leads to the conclusion that the collateral source rule does not apply under the circumstances presented.  First, this is a case where the PCF is not the tortfeasor—the party that would "benefit" from paying reduced damages to the claimants.  The application of the collateral source rule in this instance will not serve the goal of deterring wrongful conduct by imposing responsibility on the PCF to pay excess damages without a reduction in the amounts paid by the government for Mr. Thomassie's medical expenses because the PCF is not the tortfeasor who wronged the Thomassies.  Allowing the PCF any "benefit" from the Thomassies' utilization of TRICARE does not hamper the deterrent effect of tort law, nor provide a disincentive for a tortfeasor to conform his conduct to standards of reasonableness.  See **Bellard**, 980 So. 2d at 669.

Second, under the facts of this case, should the collateral source rule apply to prohibit a credit to the PCF for the TRICARE payments made to cover Mr. Thomassie's medical expenses, then the Thomassies will receive a windfall, or double recovery of damages.  See **Bozeman**, 879 So. 2d at 699.  The money for the TRICARE program comes from the general treasury of the United States, and no money is paid directly into the fund by the recipients of TRICARE benefits; thus, payments made by TRICARE are not from a source collateral to the United States.  See **Kennedy v. United States**, 750 F. Supp. 206, 213 (W.D. La. 1990).[24]  The

---

[23] See "Final Report," **Task Force on the Future of Military Health Care**, *Department of Defense*, p. 31, https://web.archive.org/web/20081028222615/http://www.dodfuturehealthcare.net/images/103-06-2-Home-Task_Force_FINAL_REPORT_122007.pdf (last accessed Aug. 12, 2020).

[24] See also **Larkin v. United States**, No. CIV.A. 2001-0527, 2002 WL 31553993, at *2 (E.D. La. Nov. 18, 2002), **Diaz v. United States**, 655 F. Supp. 411, 418 (E.D. Va. 1987), and **Mays v.**

collateral source rule was established to prevent a tortfeasor or his insurer from taking advantage of payments received by the injured victim as a result of the victim's own sources entirely independent of the tortfeasor. Part of the rationale for this rule is that the party at fault should not be able to minimize his damages by offsetting payments received by the injured victim through his own independent arrangements. Accordingly, we find that the TRICARE payments are not a collateral source and should be deducted from any recovery made by the Thomassies from the PCF. To allow the Thomassies to recover damages from the PCF for a loss for which the United States has already compensated the Thomassies would constitute an impermissible double recovery.

As the movers, the Thomassies have not met their burden of proving that there is no genuine issue as to material fact and they are entitled to judgment as a matter of law decreeing that TRICARE payments are a collateral source and should not be deducted from any recovery from the PCF. See La. C.C.P. art. 966(A)(3) and (4). Therefore, we affirm the April 24, 2017 interlocutory judgment denying the Thomassies' motion for partial summary judgment.

## DECREE

The portion of the trial court's September 13, 2018 final judgment sustaining the PCF's peremptory exception raising the objection of prescription is reversed. The portion of the trial court's September 13, 2018 final judgment sustaining the PCF's peremptory exception raising the objections of no cause of action and no right of action is reversed as to the claims for attendant care services asserted by

---

**United States**, 806 F. 2d 976, 977 (10th Cir. 1986), cert. denied, 482 U.S. 913, 107 S. Ct. 3184, 96 L. Ed. 2d 673 (1987). Those federal cases are not controlling on the issue before this court because state tort law governs the issue of whether TRICARE payments are a collateral source, not federal tort law. Those cases, which concluded that TRICARE payments are not from a collateral source, were brought under the Federal Torts Claims Act. That Act looks to the law of the place where the act or omission causing the injury occurred in ascertaining whether a defendant would be liable under the circumstances. Thus, in those cases where the injury occurred in Louisiana, Louisiana law governed to determine whether the TRICARE payments are a collateral source, not federal tort law. See **United States v. Neustadt**, 366 U.S. 696, 705 n.15, 81 S. Ct. 1294, 6 L. Ed. 2d 614 (1961).

28

Mrs. Thomassie in her capacity as the legal representative of Mr. Thomassie's estate. The portion of the trial court's September 13, 2018 final judgment sustaining the PCF's peremptory exception raising the objections of no cause of action and no right of action is affirmed as to Mrs. Thomassie's independent claim against the PCF for damages in her individual capacity for attendant care services rendered to Mr. Thomassie.

The trial court's April 24, 2017 interlocutory judgment denying the Thomassies' motion for partial summary judgment on the collateral source issue is affirmed. All costs of this appeal, in the amount of $4,656.00, are assessed equally among the parties.

**SEPTEMBER 13, 2018 JUDGMENT REVERSED IN PART, AFFIRMED IN PART; APRIL 24, 2017 JUDGMENT AFFIRMED.**

# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### 2019 CA 0173

## MICHAEL L. THOMASSIE AND LINDA A. THOMASSIE

## VERSUS

## AMEDISYS LA ACQUISITIONS, LLC
## D/B/A METRO PREFERRED HOME CARE, AN AMEDISYS COMPANY

*P̶ℳ̶c̶ ℓ̶y̶ 𝒥ℰ̶ω̶* **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MCCLENDON, J., dissenting in part.

I disagree with the majority's finding that the holding of **LeCompte v. Cont'l Cas. Co.**, 2016-1359 (La.App. 1 Cir. 7/12/17), 224 So.3d 1005, 1011, writ denied, 2017-1525 (La. 12/15/17), 231 So.3d 635, prohibits the PCF from raising the objection of prescription. Both **LeCompte** and the case before us involve the filing of a peremptory exception by the PCF. The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law. LSA-C.C.P. art. 923. In **LeCompte**, this court affirmed the trial court's ruling sustaining the PCF's exception raising the objection of no right of action as to intervenors in the suit, recognizing that the PCF's objection of no right of action did not contest the liability of the health care provider, "but rather the right of the intervenors to seek excess damages from the PCF." **LeCompte**, 224 So.3d at 1011. Likewise, in this matter, the PCF's objection of prescription does not contest the liability of the health care provider, but rather plaintiffs' right to prosecute their suit after inaction for a period of time fixed by law. See **State Through Div. of Admin. v. McInnis Bros. Const.**, 97-0742 (La. 10/21/97), 701 So.2d 937, 939. Thus, without commenting on whether **LeCompte** is a correct interpretation of the governing statute, I find that the PCF would be allowed to file an exception of prescription under this court's holding in **LeCompte**. Further, to hold otherwise would require this matter to be heard *en banc*.